64 F.3d 1152
 41 ERC 1776, 64 USLW 2154, 32
Fed.R.Serv.3d 633,
26 Envtl. L. Rep. 20,188
 UNITED STATES of America and State of Missouri, Plaintiff-Appellees,
Flanders Electric Motor Service, Inc.; Liberty Motor And
Machinery Co.; Bradford Electric Co.; Mt. Vernon Electric
Motor Service, Inc.; Roy G. Letourneau Co.; John Benson
Electric Co.; Cotter Electric Co.; Chicago Electric Co.;
Delta-Y Electric Co.; Power Equipment Co.; Cardinal
Electric; and Electrical Apparatus Service Assoc.,
Intervenors-Appellants,
v.
UNION ELECTRIC CO., et al., Defendants-Appellees.
 No. 94-3606.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1995.
Decided Aug. 30, 1995.
 
 1
 Jane Fedder Lazaroff, argued, St. Louis, MO (Joseph G. Nassif, Bruce D. Ryder and Linda W. Tape, on the brief), for appellant.
 
 
 2
 Jeffrey P. Kehne, argued, Washington, DC (Elizabeth Edmonds and David C. Shilton, on the brief), for the USA.
 
 
 3
 Thomas Blumeyer Weaver, St. Louis, MO (John R. Cowling and Shelley A. Woods, on the brief), for Union Electric.
 
 
 4
 Before FAGG and BOWMAN, Circuit Judges, and BENNETT,* District Judge.
 
 
 5
 BENNETT, District Judge.
 
 
 6
 This litigation, under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. Secs. 9601-9675, raises a narrow but significant procedural question of first impression in this circuit: whether non-settling potentially responsible parties (PRPs) under section 107 of CERCLA should be allowed to intervene in order to oppose a consent decree that the United States government has reached with settling PRPs. This is a consolidated suit brought by the United States (EPA) and the State of Missouri pursuant to 42 U.S.C. Sec. 9607, to secure clean-up of hazardous substances at the site of an electrical equipment repair and salvage company and to recover the government's response costs. Appellants, non-settling PRPs, are appealing an order of the United States District Court for the Eastern District of Missouri denying appellants' motion to intervene pursuant to Sec. 113(i) of CERCLA, 42 U.S.C. Sec. 9613(i), and Fed.R.Civ.P. 24(a) and (b), and further denying appellants' motion to deny entry of a Consent Decree.
 
 
 7
 The parties on appeal are the plaintiff-appellees the United States (EPA) and the State of Missouri, which has deferred to the EPA in all respects on appeal; 179 defendants-appellees, known as the "settling PRPs," who were PRPs sued in the district court and who had agreed to entry of the Consent Decree; and intervenors-appellants, a group of twelve "non-settling PRPs," all service shop owners, and their trade association, the Electrical Apparatus Service Association (intervenors-appellants are referred to herein as "the non-settling PRPs"). We reverse and remand.
 
 I.
 A. Factual Background
 
 8
 The subject of this lawsuit is the clean-up of the Missouri Electric Works Site (MEW Site) in Cape Girardeau, Missouri. An electrical equipment sale and repair shop once occupied the MEW Site, and, over a period of nearly forty years, engaged in the business of salvaging, selling, and repairing electrical equipment, including transformers. Beginning in the 1950s, transformers frequently used coolant oil containing polychlorinated biphenyls (PCBs), which, although useful in reducing the risk of transformer fires and explosions, posed a significant threat to the environment owing to their toxicity and persistence. Regulation of PCBs began in the late 1970s, but before that time, for many years, leakages and spills of PCB-laced coolant oils had been common at the MEW Site during the routine business of MEW.
 
 
 9
 The EPA discovered PCB contamination at the MEW Site in the early 1980s. Pursuant to CERCLA, the EPA identified as PRPs approximately 735 companies that had sold used transformers to MEW, junked transformers with MEW, or sent transformers to MEW for repair. The non-settling PRPs are service shop owners who either sold electrical transformers directly to MEW for resale, sold transformers to third parties who resold them to MEW, or sent transformers owned by others to MEW for repair. However, the non-settling PRPs did not not send any transformers to MEW to be scrapped or otherwise disposed of. Many of the PRPs identified by the EPA joined a "PRP Group," which, for approximately two years, actively negotiated with the EPA concerning allocation of clean-up costs. The non-settling PRPs assert that the allocation formula arrived at in these negotiations "grossly overstated" their potential liability, because it did not allocate response costs in a way that reflected the comparative responsibilities of the various PRPs and did not correlate costs of remedial action with contaminants contributed by the parties.
 
 
 10
 In September of 1991, the EPA distributed a proposed Consent Decree to all known PRPs requiring a response within sixty days if a PRP wished to be included in the settlement. On June 29, 1992, the EPA filed suit pursuant to CERCLA Secs. 106 and 107, 42 U.S.C. Secs. 9606 and 9607, against 179 PRPs who had agreed to settle and also filed the proposed Consent Decree. The settlement decree required the settling PRPs to bear various costs of the clean-up of the MEW Site based on the allocation formula found objectionable by the non-settling PRPs. The Consent Decree offered the settling PRPs "such protection from contribution actions or claims as is provided by Sec. 113(f)(2) of CERCLA" for matters addressed in the Consent Decree.
 
 
 11
 On November 5, 1992, the non-settling PRPs moved to intervene in this litigation. The non-settling PRPs claimed a legally protectable interest in the preservation of possible contribution claims against settling defendants and an interest in not being unfairly apportioned liability for the MEW clean-up. They also asserted a legal right to intervene under Fed.R.Civ.P. 24(a) and Sec. 113(i) of CERCLA, 42 U.S.C. Sec. 9613(i). On March 9, 1993, the district court denied the motion to intervene.
 
 B. The Decision Below
 
 12
 The opinion below appears as United States v. Union Electric Co., 863 F.Supp. 1001 (E.D.Mo.1994). In denying the motion to intervene, the court found that the non-settling PRPs' interest in contribution was not a "significantly protectable interest" because it was too "speculative and contingent" to warrant intervention as of right. Union Electric Co., 863 F.Supp. at 1004. More specifically, the district court denied the motion for intervention on the following grounds. First, the court held that a claim for contribution under CERCLA Sec. 113(f)(1), 42 U.S.C. Sec. 9613(f)(1), is not a "significantly protectable interest" warranting intervention. Id. The court concluded that Congress had included the protection from contribution claims afforded settling PRPs under Sec. 113(f)(2), 42 U.S.C. Sec. 9613(f)(2), in order to encourage early settlement. Id. Therefore, intervention founded on an interest created by Sec. 113(f)(1) should not be used to frustrate the purposes of Sec. 113(f)(2). Id. Next, the district court found that the non-settling PRPs' interest in contribution claims was too speculative and contingent, because in order for that interest to arise, litigation not yet in progress would have to be commenced against the non-settling PRPs, and such litigation might or might not result in the attribution of liability to these PRPs. Id. In the alternative, the court held that the interest of the non-settling PRPs in preventing the settling PRPs from obtaining contribution protection was highly conjectural. Id. The court also denied permissive intervention, because to do so would prolong the settlement process and delay clean-up of the site. Id. at 1005.
 
 
 13
 Having denied the non-settling PRPs' motion to intervene, the court also denied the non-settling PRPs' motion to deny entry of the Consent Decree as moot. Id. at 1008. The court then granted the EPA's motion to enter the Consent Decree. Id.
 
 C. The Appeal
 
 14
 This appeal presents an issue of first impression in this circuit. That issue is whether the district court correctly held that non-settling PRPs did not have a legally protectable interest in rights to contribution stated in CERCLA Sec. 113(f)(1) sufficient to warrant intervention pursuant to Fed.R.Civ.P. 24 or CERCLA Sec. 113(i), 42 U.S.C. Sec. 9613(i), in a suit by the EPA against PRPs who had agreed to settle when settling PRPs would thereby obtain protection from contribution claims of non-settling PRPs pursuant to CERCLA Sec. 113(f)(2).
 
 
 15
 The non-settling PRPs assert that "the only issue presented by the district court's order is whether or not the Intervenor-Appellants claimed an interest related to the subject of the action." Brief of Intervenors-Appellants, at 11. The non-settling PRPs argue that they had a legally protectable interest related to the subject of the action, because their interest in contribution claims was created by the CERCLA statute itself. The EPA and the settling PRPs counter that any interest the non-settling PRPs had was too contingent or speculative to be a protectable legal interest related to the subject of this action, and therefore the non-settling PRPs were properly denied leave to intervene. The EPA and the settling PRPs argue that the non-settling PRPs' interest was contingent upon each member being sued, found liable, and assessed excessive liability. They also argue that it was the intent of Congress in enacting CERCLA that non-settling PRPs suffer exactly the consequence the non-settling PRPs complain of here of losing a right to make contribution claims against settling PRPs. Therefore they argue that no interest in contribution claims on the part of non-settling PRPs should be allowed to interfere with or delay settlement.
 
 II.
 
 16
 The non-settling PRPs assert that they should have been allowed to intervene either pursuant to Fed.R.Civ.P. 24, which governs both intervention as of right and permissive intervention, or pursuant to CERCLA Sec. 113(i), which establishes standards for intervention in CERCLA actions comparable to those found in Fed.R.Civ.P. 24(a)(2). Fed.R.Civ.P. 24(a) provides for intervention as of right as follows:
 
 
 17
 Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 18
 CERCLA provides for intervention in terms nearly identical to those of Fed.R.Civ.P. 24(a)(2):
 
 
 19
 In any action commenced under this chapter or under the Solid Waste Disposal Act [42 U.S.C. Sec. 6901 et seq. ] in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.
 
 
 20
 CERCLA Sec. 113(i), 42 U.S.C. Sec. 9613(i). The statute places the burden on the President or the State to show that the potential intervenor's interest is adequately represented by existing parties, 42 U.S.C. Sec. 9613(i), while the intervenor bears the burden of showing inadequate representation by existing parties under Rule 24(a)(2). Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assocs., Inc., 60 F.3d 1304, 1308-09 (8th Cir.1995) (placing on intervenor the burden of showing that its interest is not adequately protected by existing parties); Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 997-98 (8th Cir.1993) (applicant for intervention bears burden of showing the applicant's interest is not adequately protected by existing parties); see also United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1180-81 & n. 9 (3d Cir.1994) (Sec. 113(i) states the same standards for intervention as does Rule 24(a)(2), and therefore the same test is applicable to both, although there is a difference in who bears the burden of showing that the intervenor's interests are already adequately protected by existing parties); United States v. Pitney Bowes, Inc., 25 F.3d 66, 69 (2d Cir.1994) (conditions for intervention under Rule 24(a)(2) and Sec. 113(i) are " 'virtually identical,' " quoting Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 641 (1st Cir.1989), differing only as to who bears the burden of proof of showing that the applicant's interest is or is not adequately protected); Arizona v. Motorola, Inc., 139 F.R.D. 141, 144 (D.Ariz.1991) ("Rule 24(a) and Sec. 113(i) differ only in the burden of proof with respect to the adequate representation requirement."); United States v. ABC Indus., 153 F.R.D. 603, 606 (W.D.Mich.1993) ("The only distinction between the two provisions is the difference in the burden of proof regarding the fourth prong of the test: Under Rule 24(a)(2), a would-be intervenor has the burden of proof on the fourth element; by contrast, Section 113(i) places the burden of proof on the government."); United States v. Acton Corp., 131 F.R.D. 431, 433 (D.N.J.1990) ("These provisions differ only in the burden of proof under the fourth part of the test: Rule 24(a) places the burden of showing inadequate representation on the applicant for intervention, whereas Sec. 113(i) of CERCLA places the burden on the government to show that the applicant's interests are adequately represented."). We are persuaded by this near identity of language that the same standards should be applied to intervention under CERCLA Sec. 113(i) as are applicable to intervention under Fed.R.Civ.P. 24(a)(2), with the exception that the burden to show that existing parties adequately represent the prospective intervenor's interests is allocated to the President or the State under Sec. 113(i), whereas under Fed.R.Civ.P. 24(a)(2) the party seeking to intervene has the burden to show that no existing party adequately represents its interests.
 
 A. Intervention As Of Right
 
 21
 We note that the district court acknowledged some of the applicable standards for intervention pursuant to Fed.R.Civ.P. 24, but then failed to apply those standards, focusing instead on what it perceived to be a conflict between allowing intervention and CERCLA's policy of fostering prompt settlement of suits to recover clean-up costs. We find that supplanting the standards applicable to intervention as of right under Rule 24(a) with policy considerations led to the erroneous denial of intervention in this case.[1] We therefore consider the standards applicable to the question of intervention as of right in some detail.
 
 
 22
 This court's standard of review for the grant or denial of leave to intervene was stated in Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994 (8th Cir.1993), as follows:
 
 
 23
 As a general proposition, whether or not a person is entitled to intervention as a matter of right is a question of law that we review de novo. United States v. Metropolitan St. Louis Sewer Dist. (MSD), 883 F.2d 54, 55 (8th Cir.1989). We review the trial court's ruling on the timeliness of a motion to intervene, however, only for abuse of discretion. Jenkins by Agyei v. Missouri, 855 F.2d 1295, 1316 (8th Cir.1988), cert. [granted], 490 U.S. 1034, 109 S.Ct. 1931, 104 L.Ed.2d 403 (1989), and aff'd in part on other grounds, rev'd in part on other grounds, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990).
 
 
 24
 Mille Lacs, 989 F.2d at 998; accord Kansas Pub. Employees Retirement Sys., 60 F.3d at 1307; Arrow v. Gambler's Supply, Inc., 55 F.3d 407, 409 (8th Cir.1995). In our review, Rule 24 is construed liberally, and we resolve all doubts in favor of the proposed intervenors. Kansas Pub. Employees Retirement Sys., 60 F.3d at 1307; Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir.1992) (doubts resolved in favor of proposed intervenor); Arkansas Elec. Energy Consumers v. Middle S. Energy, Inc., 772 F.2d 401, 404 (8th Cir.1985) (Rule 24 is to be liberally construed); Corby Recreation, Inc. v. General Electric Co., 581 F.2d 175, 177 (8th Cir.1978) (doubts should be resolved in favor of proposed intervenor); Kozak v. Wells, 278 F.2d 104, 111-12 (8th Cir.1960) (Rule 24 is to be liberally construed). We therefore turn to the law applicable to intervention under Rule 24 and make a de novo determination of its application in this litigation.
 
 1. Timeliness
 
 25
 Rule 24(a) expressly requires that a motion to intervene be "timely."[2] Whether a motion to intervene is timely is determined by considering all the circumstances of the case. Mille Lacs, 989 F.2d at 998 (citing Jenkins by Agyei v. Missouri, 855 F.2d 1295, 1316 (8th Cir.1988), cert. granted, 490 U.S. 1034, 109 S.Ct. 1931, 104 L.Ed.2d 403 (1989), and aff'd in part on other grounds, rev'd in part on other grounds, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)). In determining timeliness, three factors that bear particular consideration are the reason for any delay by the proposed intervenor in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed. Id.; see also Arrow, 55 F.3d at 409 (identifying factors that may bear on the timeliness question as including "how far the litigation had progressed at the time of the motion for intervention, the prospective intervenor's prior knowledge of the pending action, the reason for the delay in seeking intervention, and the likelihood of prejudice to the parties in the action," and finding two-year delay after proposed intervenor began "monitoring" the lawsuit before seeking to intervene was excessive delay); Arkansas Elec. Energy Consumers, 772 F.2d at 403 (identifying factors as stated in Mille Lacs, and denying leave to intervene just twelve days after commencement of the suit for restraining order because the proceedings were already well advanced). If the applicant's motion to intervene was not timely filed, the applicant is barred from intervening. Arrow, 55 F.3d at 409; Mille Lacs, 989 F.2d at 998.
 
 
 26
 In the present litigation, the motion to intervene was filed slightly more than four months after the suit itself was filed. The non-settling PRPs argue that their motion to intervene was timely, because no substantive activity in the case had occurred between filing of the case and filing of the motion to intervene. They point out that their motion to intervene was filed some three months prior to the EPA's March 9, 1993, motion for entry of the Consent Decree. The EPA and settling PRPs do not specifically contest the fact that the non-settling PRPs' motion to intervene was timely filed, but they have suggested that allowing intervention would delay the entry of the Consent Decree.
 
 
 27
 The question for determining the timeliness of the motion to intervene is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change. Mille Lacs, 989 F.2d at 998-99. This court has observed that
 
 
 28
 [p]rejudice that results from the mere fact that a proposed intervenor opposes one's position and may be unwilling to settle always exists when a party with an adverse interest seeks intervention. Any prejudice to the [existing parties'] ability to settle results not from the fact of the [applicant's] delay in seeking intervention, but rather from the [applicant's] presence in the suit. Rule 24(a) protects precisely this ability to intervene in litigation to protect one's interests.
 
 
 29
 Id. at 999. Thus, the court will not consider any delay in entry of the Consent Decree because the intervenors oppose its entry as presenting any bar to intervention. Furthermore, in the present case, the delay between filing of the motion to intervene and the district court's consideration of it was almost as long as the delay between the filing of the lawsuit and the filing of the motion to intervene. The litigation had progressed little between the time it was filed and the time the non-settling PRPs moved to intervene, and it was not until three months later that the EPA moved the court for entry of the Consent Decree. Id. (proceedings were still at preliminary stage and little progress had occurred at time of motion to intervene). The motion to intervene was therefore timely, and this court will pass on to other factors in the Rule 24 intervention analysis.
 
 2. Intervention Pursuant To Statutory Right
 
 30
 Fed.R.Civ.P. 24(a) provides for intervention as of right, in the first instance, "when a statute of the United States confers an unconditional right to intervene." Although the non-settling PRPs assert that they had a statutory right to intervene pursuant to CERCLA Sec. 113(i), the court does not understand the non-settling PRPs to be arguing that their motion for intervention falls within Fed.R.Civ.P. 24(a)(1). Indeed, the parallels between the language of the statute and Fed.R.Civ.P. 24(a)(2) provide a convincing argument that the intervention the statute authorizes is not of the unconditional variety contemplated by Rule 24(a)(1).[3] Instead, Sec. 113(i) provides for intervention on the same conditions (except for the burden of proof on adequate representation by existing parties) as does Rule 24(a)(2). The court need not reach the question of whether Sec. 113(i) provides an "unconditional" right to intervene, however, because no party has expressly asserted here that it does, and because the court finds that intervention should be allowed under Fed.R.Civ.P. 24(a)(2). See United States ex rel. McGough v. Covington Technologies Co., 967 F.2d 1391, 1394 n. 3 (9th Cir.1992) (holding that court need not decide if 31 U.S.C. Sec. 3730(c)(3) of the False Claims Act conferred upon the United States an unconditional right to intervene in its language authorizing the court to "permit the government to intervene at a later date [after the initial 60-day period for intervention has expired] upon a showing of good cause," because the court permitted intervention under Fed.R.Civ.P. 24(a)(2)); United States v. Stringfellow, 783 F.2d 821, 825 (9th Cir.1985) ("Because we reverse the district court's denial of intervention under Rule 24(a)(2), we do not rule on appellant's statutory right of intervention claim.").
 
 
 31
 3. Intervention Pursuant To Fed.R.Civ.P. 24(a)(2)
 
 
 32
 This court has, upon more than one occasion, stated that, besides timely application, the applicant for intervention must satisfy a tripartite test in order to intervene pursuant to Fed.R.Civ.P. 24(a)(2):
 
 
 33
 1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties.
 
 
 34
 Mille Lacs, 989 F.2d at 997 (citing Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action, 558 F.2d 861, 869 (8th Cir.1977)); see also Kansas Pub. Employees Retirement Sys., 60 F.3d at 1307 (identifying same three inquiries); Arrow, 55 F.3d at 409 (same).
 
 
 35
 a. Interest And Impairment Of Interest
 
 
 36
 "Recognized interest." Although in Mille Lacs and Planned Parenthood, this court defined an interest sufficient to support intervention as "a recognized interest in the subject matter of the litigation," the courts of appeals of other circuits have stated that intervention requires that the intervenor have an interest in the proceedings that is "direct, substantial, and legally protectable." Alameda Water & Sanitation Dist. v. Browner, 9 F.3d 88, 90 (10th Cir.1993); Panola Land Buying Ass'n v. Clark, 844 F.2d 1506, 1509 (11th Cir.1988); United States v. Perry County Bd. of Educ., 567 F.2d 277, 279 (5th Cir.1978). These standards are not contradictory. The applicant for intervention must have an interest in the subject matter of the litigation, i.e., an interest that is "direct," as opposed to tangential or collateral. Furthermore, that interest must be "recognized," i.e., both "substantial" and "legally protectable." See S.E.C. v. Flight Transp. Corp., 699 F.2d 943, 949 (8th Cir.1983) (interest asserted must be " 'significantly protectable interest' in the primary litigation," quoting Corby Recreation, Inc., 581 F.2d at 177, in turn quoting Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971)).
 
 
 37
 In Mille Lacs, this court found a "recognized interest in the subject matter of the litigation" on the part of the applicants for intervention, because the litigation involved the rights of a band of Indians to use property owned by the applicants, and the applicants had an interest in protecting their property values. Mille Lacs, 989 F.2d at 998. The court in Mille Lacs cited its prior decision in Planned Parenthood, 558 F.2d at 869, as holding that an interest in protecting property values was a "protectable interest." Mille Lacs, 989 F.2d at 998. In S.E.C. v. Flight Transp. Corp., 699 F.2d 943, 948 (8th Cir.1983), this court also held that an interest in maintaining market values in the proposed intervenors' homes was sufficient to support intervention.
 
 
 38
 Impairment of the interest. The second factor of the Mille Lacs analysis is whether the interest of the applicant for intervention is one that might be impaired by the disposition of the litigation. Mille Lacs, 989 F.2d at 997. In Kansas Pub. Employees Retirement Sys., this court noted that in 1966 the Supreme Court had amended the rule to eliminate a requirement that the proposed intervenor "is or may be bound by the judgment in the action" in favor of the requirement that "the disposition of the action may as a practical matter impair or impede the applicant's ability to protect [its] interest." Kansas Pub. Employees Retirement Sys., 60 F.3d at 1307 (citing precedent of this circuit so holding since 1966). This court then reaffirmed that the applicant "need not show that, but for its intervention, its interest 'would be' impaired by the operation of res judicata, collateral estoppel, or stare decisis, but rather only that its interest 'may be' so impaired." Id. (reversing district court for requiring that the intervenor show that its interest "would" or "will be" impaired, because that requirement conflicted with numerous holdings of the court, and listing cases so holding).
 
 
 39
 In Mille Lacs, the court found that a settlement favorable to the Indian Band might have impaired the recognized interests of the applicants for intervention, because it might have permitted Band members to exercise treaty rights upon the proposed intervenors' land, thereby affecting property values. Mille Lacs, 989 F.2d at 997. Even if the Band's treaty rights could only be exercised on public land, that result of the litigation could still affect intervenors' interests in property values by depleting stocks of fish and game on the proposed intervenors' property. Id.; see also Flight Transp., 699 F.2d at 948 (recognized interest that might be impaired where the litigation might have resulted in a loss in market value of the intervenors' homes). In J & N Logging Co. v. Rockwood Ins. Co., 848 F.2d 1438 (8th Cir.1988), this court described the necessary showing as a "sufficient stake" in the litigation. J & N Logging Co., 848 F.2d at 1439 (where a person was an insured by operation of the language of an insurance policy, the person had an interest in the payment of claims under the policy; the district court was therefore ordered to reconsider whether the person had a "recognized interest in the subject matter of the litigation" that might also be impaired in litigation to require payment of claims under the policy).
 
 
 40
 "Contingent" interests. Questions of the adequacy of an interest and its potential for impairment may overlap in cases in which the interest is in some way "contingent." Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation. Jenkins by Agyei v. Missouri, 967 F.2d 1245, 1248 (8th Cir.), cert. denied sub nom. Clark v. Jenkins, --- U.S. ----, 113 S.Ct. 811, 121 L.Ed.2d 684 (1992); Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist, 738 F.2d 82, 84 (8th Cir.1984); Flight Transp., 699 F.2d at 948. Furthermore, a tardy intervenor "cannot breathe life into rights already foregone." Jenkins by Agyei, 967 F.2d at 1248 (quoting Little Rock Sch. Dist., 738 F.2d at 84, and finding application to intervene untimely because intervenors waited until school board vote actually impaired their interest and time for appeal had run). Thus, a person claiming an interest in the litigation does not have to wait until he or she has suffered irreparable harm before the requirements for intervention under Rule 24(a) have been met. Id. This court has emphasized that
 
 
 41
 [t]he rule does not require, after all, that appellants demonstrate to a certainty that their interests will be impaired in the ongoing action. It requires only that they show that the disposition of the action 'may as a practical matter' impair their interests.
 
 
 42
 Little Rock Sch. Dist., 738 F.2d at 84 (emphasis in original); see also Kansas Pub. Employees Retirement Sys., 60 F.3d at 1307-08 (listing cases confirming that the requirement is that the interest "may" be affected); Jenkins by Agyei, 967 F.2d at 1248 (quoting Little Rock Sch. Dist.). The court should be mindful that " '[t]he "interest" test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.' " Flight Transp., 699 F.2d at 949 (quoting Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694, 700 (1967)). Thus, in Flight Transp., this court rejected an argument that "inchoate" interests are insufficient, because even where the precise moment of "vesting" is undetermined, the interest may be sufficiently certain to do so to support intervention. Id. at 948-49.
 
 
 43
 Other circuit courts of appeals have similar standards concerning purportedly "speculative" claims. For example, in Sierra Club v. Espy, 18 F.3d 1202 (5th Cir.1994), the Fifth Circuit Court of Appeals rejected the argument that the interest of representatives of the forest products industry in existing lumber contracts was "too speculative and generalized to satisfy rule 24" where the litigation involved a potential bar on a particular kind of forest management. Sierra Club, 18 F.3d at 1207. The court found instead that the intervenors' interest in the contracts was "legally protectable" when threatened by the potential bar. Id. By way of contrast, the District of Columbia Circuit Court of Appeals found the interest of a power company "unduly remote" and "too academic" to allow intervention pursuant to Fed.R.Civ.P. 24(a)(2), where the company did not operate in the parties' geographical market or have any other economic relationship with the parties, but instead "might at some time" seek to reopen the proceedings concerning licensing of a competitor. City of Cleveland, Ohio v. NRC, 17 F.3d 1515, 1517-18 (D.C.Cir.1994) (equating interest sufficient for intervention as of right with standing under Article III of the Constitution).
 
 
 44
 The "contingency" of contribution claims under CERCLA. Whether an interest in contribution claims is sufficiently protectable, rather than excessively "speculative" or "contingent," to support intervention in an action under CERCLA has concerned a remarkably small number of courts in view of the statutory authority to intervene in CERCLA actions. Nonetheless, the small group of resulting decisions has produced a split on the issue. In United States v. Alcan Aluminum, Inc., 25 F.3d 1174 (3d Cir.1994), the Third Circuit Court of Appeals reviewed denial of a motion to intervene by applicants who had settled with the government, but were seeking to intervene in litigation between the government and later settling parties. The court reasoned, in dicta, that where the intervenor has not yet settled with the government, thus establishing what if any liability it will have, its interest in contribution is contingent, and therefore insufficient to support intervention. Alcan, 25 F.3d at 1184. The court reasoned that any contribution right a non-settling PRP might have "depends on the outcome of some future dispute in which the applicant may, or may not, be assigned a portion of liability." Id. The court contrasted the interest of a non-settling PRP in contribution with that of a settlor as follows:
 
 
 45
 When a PRP settles with the government it accepts a specific liability. Unlike the interest of an applicant who has not yet settled, which is contingent in the sense that it may never ripen, the interest of an applicant who has already settled is contingent only in the sense that it cannot be valued. However, the fact that the interest cannot be valued does not mean it does not exist. The act of settling transforms a PRP's contribution right from a contingency to a mature, legally protectable interest.
 
 
 46
 Id. Although it had earlier rejected reliance on legislative history, id. at 1181, the court then considered legislative intent as supporting this conclusion, finding that Congress intended non-settling PRPs to be "expos[ed] ... to liability for the rest of the cleanup cost even if that exposure exceeds the amount the non-settlor's actions added to the overall cost of the cleanup." Id. at 1184 (citing United States v. Cannons Eng'g Corp., 720 F.Supp. 1027, 1040 (D.Mass.1989), aff'd, 899 F.2d 79 (1st Cir.1990)). Because the Third Circuit Court of Appeals believed that "[p]ermitting intervention should encourage settlements," it held that PRPs who had earlier settled with the government "have a sufficiently protectable interest in the litigation [in suing a non-settling PRP for contribution] to permit their intervention." Id. at 1185; see also United States v. Browning-Ferris Indus., Inc., 19 Chem. Waste Lit.Rep. 436 (M.D.La.1989) (holding that earlier settlor could not intervene to protect contribution claims in litigation for entry of a subsequent consent decree against other settling PRPs, because Sec. 113(f)(3)(C) subordinated rights of all others to the rights of the government).[4] The conclusions of the Third Circuit Court of Appeals in Alcan and of the district court in Browning-Ferris Industries are, of course, only dicta on the issue presently before this court, because the present case involves instead non-settling PRPs seeking to intervene. Compare Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 770 (7th Cir.1994) (assuming in dicta that if the non-settlor before it were barred from pursuing an independent action for contribution after entry of a consent agreement between the government and the settling parties, in the future, other non-settling persons would seek to intervene pursuant to Sec. 113(i) in litigation between the government and settling parties for entry of a consent decree in order to protect their contribution rights).
 
 
 47
 Earlier decisions of district courts, however, in which non-settlors sought intervention, followed much the same reasoning as was stated by the Third Circuit Court of Appeals in Alcan, looking to legislative history and policy, to conclude that non-settling PRPs did not have a legally protectable interest in contribution claims to intervene in litigation between the government and settling PRPs to enforce a consent decree. See United States v. ABC Indus., 153 F.R.D. 603, 607-08 (W.D.Mich.1993) (finding disproportionate liability under CERCLA placed upon non-settling PRPs to be "well-accepted," and holding that an interest in contribution claims, although it did not appear to be "contingent or speculative here," was nonetheless not "significantly protectable," because of CERCLA's express subordination of contribution claims by the desire for early de minimis settlements and finality of settlement judgments); United States v. Wheeling Disposal Serv., Inc., No. 92-0132-CV-W-1, slip op. at 1-3, 1992
 
 
 48
 WL 685724 (W.D.Mo. Oct. 1, 1992) (holding that non-settling PRPs do not have a protectable interest in contribution sufficient to support intervention); Motorola, Inc., 139 F.R.D. at 144-146 (relying on the evident legislative intent of CERCLA to encourage settlement and require non-settlors to bear disproportionate liability to deny intervention by non-settlors founded on an interest in contribution and fair settlement); United States v. Vasi, 22 Chem.Waste Lit.Rep. 218, 219 (N.D.Ohio 1991) (reviewing legislative history to find non-settling PRPs do not have an automatic right of intervention under Sec. 113(i) and that allowing intervention to protect contribution claims would result in parties refusing to enter into meaningful settlement negotiations); United States v. Beazer East, Inc., 22 Chem.Waste Lit.Rep. 218, 222-23 (N.D.Ohio 1991) (rejecting intervention to protect contribution as encouraging "recalcitrance" by PRPs in settlement negotiations); United States v. Mid-State Disposal, Inc., 131 F.R.D. 573, 576-77 (W.D.Wis.1990) (also relying on "statutory incentive" of settlement, and fear that allowing intervention would "render negotiations between the original parties a waste of time and stall the implementation" of the settlement as justifying denial of motion to intervene to protect contribution claims).
 
 
 49
 Against the clamor of this authority is heard a lone voice declaring that a different result is proper. In United States v. Acton Corp., 131 F.R.D. 431 (D.N.J.1990), the court first rejected the government's argument that Congress did not intend to permit "dissatisfied non-settlors to intervene in order to challenge the entry of CERCLA consent decrees." Acton, 131 F.R.D. at 433. The court reasoned as follows:
 
 
 50
 [T]he Court need not consider the legislative history of the CERCLA provisions, as the statute's terms are unambiguous. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); Malloy v. Eichler, 860 F.2d 1179, 1183 (3d Cir.1988). Section 113(i) gives the intervention rights to "any person" who satisfies the section's requirements. Accordingly, the Government's argument [that legislative intent indicated dissatisfied non-settlors should not be allowed to intervene in order to challenge entry of a CERCLA consent decree] will be disregarded.
 
 
 51
 Id. The court then applied the four requirements for intervention as of right--timeliness, existence of a protected interest, impairment of that interest, and lack of representation by an existing party--found in both Rule 24(a)(2) and CERCLA Sec. 113(i). Id. The court found the central issue in its inquiry, as in ours, to be whether the applicants had a protectable interest in either contribution or the fairness of the proposed consent decree. Id.
 
 
 52
 As to the protectability of the interest, the Acton court first concluded that the interest of the intervenors in contribution claims was neither merely economic nor so contingent as to be unprotectable. Id. The court found that the interest was statutory and would be extinguished if the consent decree was entered, and therefore was legally protectable. Id. The court then rejected the argument that the interest was contingent. Id. at 434. The court concluded that none of the identified contingencies go to the existence of the right itself. Id. The court also found that the government's position would vitiate the right to contribution in Sec. 113(f)(1), because, under the government's conception, non-settling PRPs could not seek contribution against PRPs who had signed an unapproved consent decree, because the interest was only contingent, but the right would be cut off as soon as the consent decree was approved. Id. Finally, the court rejected the notion that participation in negotiations or notice and comment proceedings before the drafting of the settlement agreement substituted for adequate representation in the litigation by an existing party. Id. at 436. The court found that whatever the non-settlors' representation in those prior proceedings had been, there was no existing party representing those parties in the current litigation. Id.
 
 
 53
 b. Sufficiency of the interest here
 
 
 54
 In this case, we feel compelled to follow the more cogent reasoning of the minority position. We hold that the prospective intervenors here had both a recognized interest in the subject matter of the litigation and that their interest was likely to be impaired in this litigation. Mille Lacs, 989 F.2d at 997. In reaching this conclusion, we consider each of the proper factors courts must consider to determine whether intervention is appropriate. We must begin our analysis, however, by discussing factors it is inappropriate for courts to consider in determining whether to allow intervention as of right under either the rule or the CERCLA provision.
 
 
 55
 Policy and legislative history. We noted above our disapproval of the district court's reliance primarily on policy arguments instead of on the factors that should be considered in determining whether intervention should be allowed under Fed.R.Civ.P. 24(a)(2) and Sec. 113(i). Accord In re Sierra Club, 945 F.2d at 779 (policy considerations, although relevant to permissive intervention, have no place in analysis of a claim to intervention as of right). The error here of considering policy rather than the factors dictated by Rule 24(a)(2) and Sec. 113(i) of CERCLA was further compounded by considering legislative intent when no ambiguity in the statute could make such an inquiry appropriate. "The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984); United States ex rel. Harlan v. Bacon, 21 F.3d 209, 210 (8th Cir.1994) ("When construing a statute, we are obliged to look first to the plain meaning of the words employed by the legislature," and the court "must give effect to the unambiguously expressed intent of Congress," citing Chevron ); United States v. Manthei, 979 F.2d 124, 126 (8th Cir.1992) ("When interpreting statutory language, the court must first look to the plain meaning of the language," citing North Dakota v. United States, 460 U.S. 300, 312-13, 103 S.Ct. 1095, 1102-03, 75 L.Ed.2d 77 (1983)). The Supreme Court describes this rule as the "one, cardinal canon before all others." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Thus, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Id. (citing Ron Pair, 489 U.S. at 241-242, 109 S.Ct. at 1030-31; United States v. Goldenberg, 168 U.S. 95, 102-103, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897); Oneale v. Thornton, 10 U.S. (6 Cranch) 53, 68, 3 L.Ed. 150 (1810)).
 
 
 56
 When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." Ron Pair, 489 U.S. at 241, 109 S.Ct. at 1030 (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1502 (8th Cir.1992) (plain meaning of a statute governs over ambiguous legislative history, citing Ron Pair ). The plain meaning of a statute is decisive, "except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." Ron Pair, 489 U.S. at 242, 109 S.Ct. at 1031 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); INS v. Cardoza-Fonseca, 480 U.S. 421, 452, 107 S.Ct. 1207, 1223-24, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring in judgment) (ordinary meaning governs unless implementing it would be "patent absurdity").
 
 
 57
 Here, CERCLA's intervention provisions unambiguously provide for intervention by "any person" when such person meets the requirements of the statute. CERCLA Sec. 113(i), 42 U.S.C. Sec. 9613(i); Acton, 131 F.R.D. at 433. There is no restriction on persons who have refused to settle claims and are seeking to intervene in consent decree litigation to preserve contribution claims under Sec. 113(f)(1). Nor does the court find any "patent absurdity" or "a result demonstrably at odds with the intentions of [the] drafters." Ron Pair, 489 U.S. at 241, 109 S.Ct. at 1031; Cardoza-Fonseca, 480 U.S. at 452, 107 S.Ct. at 1223-24 (1987) (Scalia, J., concurring in judgment). The EPA and settling PRPs stress a supposed conflict between allowing intervention under Sec. 113(i) to protect contribution claims under Sec. 113(f)(1) and the intent of Sec. 113(f)(2) to induce prompt settlement. There is no contradiction among these provisions requiring resort to legislative intent. This court finds that all can be read together and each given its proper effect. Under this reading, the incentive to prompt settlement in Sec. 113(f)(2) remains intact; it simply is not the sole purpose of Sec. 113 taken as a whole. By its terms, subsection 113(f)(1) provides for contribution, subsection 113(f)(2) provides for the termination of that interest as to settling PRPs, and subsection 113(i) provides for intervention to protect that and other interests of persons affected by the litigation.
 
 
 58
 Our rejection of legislative intent and policy as the primary considerations in the analysis of whether or not to permit intervention under Sec. 113(i), of course, puts us at odds with the majority of courts to decide the issue. Nonetheless, we find reliance for a determination of intervention solely on the basis of the factors identified in Sec. 113(i) to be the appropriate course, because we are to apply the factors identified by Congress. Germain, 503 U.S. at 253, 112 S.Ct. at 1149. Although Congress has identified a number of factors as relevant to intervention in CERCLA litigation pursuant to Sec. 113(i), policy and legislative intent are not among them.
 
 
 59
 Recognized interest. Turning therefore to consideration of the factors identified in both Sec. 113(i) and Rule 24(a)(2), we consider first whether the applicants here have "an interest relating to the subject of the action." CERCLA Sec. 113(i), 42 U.S.C. Sec. 9613(i); Fed.R.Civ.P. 24(a)(2). The non-settling PRPs' interest was created by provisions of the precise statute under which the litigation was brought. CERCLA Sec. 113(f)(1), 42 U.S.C. Sec. 9613(f)(1), provides for the right of contribution as follows:
 
 
 60
 (f) Contribution
 
 
 61
 (1) Contribution
 
 
 62
 Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.
 
 
 63
 CERCLA Sec. 113(f)(1), 42 U.S.C. Sec. 9613(f)(1). This litigation has been brought pursuant to 42 U.S.C. Secs. 9606 and 9607, and the settling PRPs and the non-settling PRPs seeking to intervene are all persons who are or are potentially liable in this action. The contribution interest created by Sec. 113(f)(1) is directly related to the subject matter of the litigation, because it may be asserted "during or following" that litigation, and arises from the liability or potential liability of persons as the result of that litigation. CERCLA Sec. 113(f)(1), 42 U.S.C. Sec. 9613(f)(1); Mille Lacs, 989 F.2d at 997 (recognized interest in the subject matter of the litigation). That interest is also substantial and legally protectable: CERCLA Sec. 113(f)(1) itself provides for legal protection of the interest in the primary litigation by providing for contribution claims. Flight Transp., 699 F.2d at 949 (interest asserted must be " 'significantly protectable interest' in the primary litigation," quoting Corby Recreation, Inc., 581 F.2d at 177).[5]
 
 
 64
 Contrary to the arguments of the EPA and settling PRPs here, it is precisely because Sec. 113(f)(2) would cut off the interest established by Sec. 113(f)(1) that the non-settling PRPs have an interest in the present litigation sufficient to warrant intervention. Settlement under Sec. 113(f)(2) purports to cut off the rights of persons not necessarily present in the litigation. The threat of cutting off contribution rights of non-settling PRPs creates a direct and immediate interest on the part of non-settling PRPs in the subject matter of the present litigation.
 
 
 65
 We find the conclusion that the contribution interest is "speculative" or "too contingent" to support intervention to be wrong in law. The interest does not arise only after the daisy-chain of events identified here by the EPA and settling PRPs and in other decisions by other courts as including litigation against the prospective intervenors, a finding of liability against them, and assessment of excessive liability. Rather, under the terms of Sec. 113(f)(1) itself, the interest arises at any time during or following litigation pursuant to Sec. 106 or Sec. 107 between persons who are or are potentially liable. CERCLA Sec. 113(f)(1), 42 U.S.C. Sec. 9613(f)(1). Thus, no finding of liability is required, nor assessment of excessive liability, before the contribution interest arises. Only the recovery on a contribution claim must await the outcome of this or further litigation, not the right to bring such a claim. Even were it true that the contribution interest is somehow contingent upon further litigation, either to determine its monetary value or whether it indeed vests or the actual extent of any impairment, that "contingency" alone would not bar intervention. Jenkins by Agyei, 967 F.2d at 1248; Little Rock Sch. Dist., 738 F.2d at 84; Flight Transp., 699 F.2d at 948. The interests here may be "inchoate" to the extent that the value of any contribution claim has not yet been determined, but the interest is nonetheless sufficiently certain once a person has been identified as a PRP to support intervention. Flight Transp., 699 F.2d at 949. However, we conclude that the interest itself is not contingent nor speculative, but statutory, and that it existed from the inception of this litigation pursuant to Secs. 106 and 107 of CERCLA. See Acton, 131 F.R.D. at 433 (the interest is statutory, not contingent).
 
 
 66
 Impairment. Certainly, the contribution interest of the prospective intervenors may as a practical matter be impaired by the present litigation. Fed.R.Civ.P. 24(a)(2); Kansas Pub. Employees Retirement Sys., 60 F.3d at 1307-08; Mille Lacs, 989 F.2d at 997; Jenkins by Agyei, 967 F.2d at 1248; Little Rock Sch. Dist., 738 F.2d at 84. CERCLA Sec. 113(f)(2) expressly states that the contribution rights of non-settling parties are impaired as to settling parties:
 
 
 67
 (2) Settlement
 
 
 68
 A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.
 
 
 69
 CERCLA Sec. 1113(f)(2), 42 U.S.C. Sec. 9613(f)(2). Thus, disposition of the present litigation could bar or reduce the monetary value of the contribution claims of the prospective intervenors against the settling PRPs. See Mille Lacs, 989 F.2d at 998 (litigation could result in impairment of value of property, thus impairing property interest of prospective intervenor); J & N. Logging Co., 848 F.2d at 1439 (interest in payment of claims impaired by litigation to determine payment); see also Sierra Club, 18 F.3d at 1207 (interest in contract rights was "legally protectable" when threatened by potential bar at issue in litigation). The prospective intervenors here therefore have a "sufficient stake" in the litigation to be allowed to intervene. J & N. Logging Co., 848 F.2d at 1439.[6]
 
 
 70
 Similarly, we find that an interest in the "fairness" of the Consent Decree is also legally protectable and otherwise sufficient support intervention, at least to the extent that applicants here have been able to give concrete contours to that interest so that it is not merely an "indirect" interest or amorphous concern of any settlement. The non-settling PRPs specifically challenge the fairness of the allocation formula used in the Consent Decree as placing upon them excessive liability. The ability of the non-settling PRPs to recoup excessive allocation of liability to them by way of contribution claims against the settling PRPs is again cut off by entry of the Consent Decree. We therefore hold that the applicants for intervention here have presented a protectable interest that may, as a practical matter, be impaired in the disposition of the present litigation. We turn next to the question of whether those interests are adequately protected by existing parties.
 
 
 71
 c. Inadequate Representation By Existing Party
 
 
 72
 The third requirement for intervention is that the interest must not be adequately protected by the existing parties. Mille Lacs, 989 F.2d at 997.[7] This court has noted that "[t]ypically, persons seeking intervention need only carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties." Mille Lacs, 989 F.2d at 999 (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972), and Planned Parenthood of Minnesota, Inc., 558 F.2d at 869); Little Rock Sch. Dist., 738 F.2d at 84 (burden on prospective intervenor to show that interest is not adequately represented is "minimal," citing Flight Transp., 699 F.2d at 948, and Trbovich, 404 U.S. at 538 n. 10, 92 S.Ct. at 636 n. 10); see also Kansas Pub. Employees Retirement Sys., 60 F.3d at 1308 ("This requirement is met by a minimal showing that representation 'may be' inadequate," citing Trbovich and Mille Lacs ); Arrow, 55 F.3d at 409. In Little Rock Sch. Dist., this court found the "minimal" burden "more than met" where school districts, as employers, could "hardly be expected to litigate with the interests of their employees uppermost in their minds" in desegregation litigation. Little Rock Sch. Dist., 738 F.2d at 84.
 
 
 73
 Although the burden to show inadequate representation is generally "minimal," this court has recognized that the applicant for intervention bears a heavier burden on this factor when a party already in the suit has an obligation to represent the interests of the party seeking to intervene. Mille Lacs, 989 F.2d at 1000. For example, where the state is a party to a suit involving a matter of sovereign interest, the state is presumed to represent the interests of all of its citizens. Id. at 1000; see also Environmental Defense Fund, Inc. v. Higginson, 631 F.2d 738 (D.C.Cir.1979) (applying presumption of adequate representation where water districts seeking intervention, like existing governmental parties, sought to avoid requirement that federal officials prepare an environmental impact statement analyzing federal water resource projects); Commonwealth of Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d Cir.) (presumption of adequate representation of citizens by governmental body or officer), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); but see Arizona v. California, 460 U.S. 605, 614-15, 103 S.Ct. 1382, 1388-89, 75 L.Ed.2d 318 (1982) (United States held not adequate representative of interests of five Indian Tribes concerning water rights "critical to their welfare," because Tribes are entitled "to take their place as independent qualified members of the modern body politic").[8]
 
 
 74
 Even where such a presumption of adequate representation arises on this basis, however, it may be rebutted by a showing that the applicant's interest cannot be subsumed within the shared interest of the citizens of the state. Id. at 1000-1001 (citing Dimond v. District of Columbia, 792 F.2d 179, 192-93 (D.C.Cir.1986)). For example, in Dimond, the court found that the citizen, an insurance company, could not be adequately represented by the governmental entity already participating in the litigation. Dimond, 792 F.2d at 192-93. The Third Circuit Court of Appeals found that while the governmental entity was charged by law with representing the public interest, the insurance company
 
 
 75
 on the other hand, [was] seeking to protect a more narrow and "parochial" financial interest not shared by the citizens of the District of Columbia. The District would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest. Since [the insurance company's] interest cannot be subsumed within the shared interest of the citizens of the District of Columbia, no presumption exists that the District will adequately represent its interests.
 
 
 76
 Id. (citations omitted). This court found that the presumption did not apply in Mille Lacs, because the applicants to intervene, certain counties, owned some property outright from which they derived specific benefits, and that these interests were narrower than and not subsumed by the general interest of the State of Minnesota in protecting fish and game. Mille Lacs, 989 F.2d at 1001.
 
 
 77
 The EPA and the settling PRPs appear to argue that the non-settling PRPs' interests have been adequately protected in the present litigation, because of the extensive negotiations and public comment procedures that preceded the drafting of the Consent Decree the EPA seeks to impose in this litigation. The suggestion that the intervenors had the opportunity to protect their interests in the comment procedures prior to filing of the proposed Consent Decree simply misses the point. The question is not whether the intervenors had any other way of protecting their interests, but whether those interests are protected in this litigation. Fed.R.Civ.P. 24(a)(2); Mille Lacs, 989 F.2d at 997-99. They are not.
 
 
 78
 The court must compare the interests of proposed intervenors with the interests of current parties. Kansas Pub. Employees Retirement Sys., 60 F.3d at 1308-09; Arrow, 55 F.3d at 409-410 (finding a "presumption of adequate representation" where the proposed intervenor's interests are "identical" to those of an existing party). However, "[w]here those interests are disparate, even though directed at a common legal goal, ... intervention is appropriate." Kansas Pub. Employees Retirement Sys., 60 F.3d at 1308-09. In this case, the settling PRPs have interests contrary to those of the non-settling PRPs, because they desire to cut-off the contribution interests of the intervenors. The EPA has already disregarded the interest of the non-settling PRPs by offering the Consent Decree to which the non-settling PRPs objected during the comment procedures. Both the existing plaintiffs and existing defendants have an interest in entry of the Consent Decree that is contrary to the interest of the intervenors who oppose entry of the Consent Decree on the ground that it is unfair to them.
 
 
 79
 Nor can it be argued here that the EPA, either through its comment procedures or by its participation in this litigation, is a representative of the sovereign who will adequately represent the interests of the non-settling PRPs as citizens. Here, the interests of the prospective intervenors cannot be subsumed within the shared interest of the citizens of the United States. Mille Lacs, 989 F.2d at 1000-1001. The interests of the prospective intervenors are narrower and not subsumed by the general interest of the United States in providing for the clean up of polluted sites. Mille Lacs, 989 F.2d at 1001. Because of this difference in interests, the EPA can hardly be expected to litigate with the interests of the non-settling PRPs uppermost in its mind. Little Rock Sch. Dist., 738 F.2d at 84. The prospective intervenors are seeking to protect a more "parochial" financial interest not shared by other citizens in not losing a right to seek contribution from other PRPs and in not being subjected to excessive liability for the clean up. Accord, Dimond, 792 F.2d at 192-93. As in Dimond, the EPA would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest. Id. There is no existing party to this litigation who can adequately represent the identified interests of the applicants for intervention.
 
 
 80
 The non-settling PRPs therefore meet the requirements for intervention as of right articulated in both Rule 24(a)(2) and CERCLA Sec. 113(i). We hold that the district court erred in denying the non-settling PRPs' motion to intervene.
 
 B. Permissive Intervention
 
 81
 The non-settling PRPs also sought, and the district court denied, permissive intervention pursuant to Fed.R.Civ.P. 24(b).[9] Having found that the non-settling PRPs were entitled to intervene as of right, however, this court need not consider whether the non-settling PRPs should have been allowed permissive intervention pursuant to Fed.R.Civ.P. 24(b).
 
 CONCLUSION
 
 82
 There being no adequate representatives of the prospective intervenors' legally protectable interests among the existing parties to this litigation, we hold that the prospective intervenors were entitled to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2). The district court erred when it denied intervention to these non-settling PRPs. The district court therefore improperly approved entry of the Consent Decree without the participation of all parties entitled to contest the entry of that decree.
 
 
 83
 We reverse and remand for withdrawal of approval of the Consent Decree and for grant of the non-settling PRPs' motion for leave to intervene.
 
 
 
 *
 The Honorable MARK W. BENNETT, United States District Judge for the Northern District of Iowa, sitting by designation
 
 
 [1]
 In In re Sierra Club, 945 F.2d 776 (4th Cir.1991), the Fourth Circuit Court of Appeals similarly found error in the district court's consideration of policy matters in deciding the question of intervention as of right:
 The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance. Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.
 In re Sierra Club, 945 F.2d at 779. We agree that policy considerations are not part of the Rule 24(a) intervention analysis.
 
 
 [2]
 This is the one element of the district court's determination of a motion for intervention that is reviewed for abuse of discretion. Kansas Pub. Employees Retirement Sys., 60 F.3d at 1307; Mille Lacs, 989 F.2d at 998. However, the district court in this case made no determination as to whether the motion to intervene was timely. This court must therefore make the determination of timeliness on the basis of its own review of the record and the lack of dispute among the parties on the timeliness issue
 
 
 [3]
 Nor does Sec. 113(i) establish the sort of "unqualified" right to intervene held to be "unconditional" under Fed.R.Civ.P. 24(a)(1). See, e.g., Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1230-31 (3d Cir.1994) (Sec. 1109(b) of the Bankruptcy Code, 11 U.S.C. Sec. 1109(b), provides creditors with an unconditional right to intervene in bankruptcy proceedings pursuant to Fed.R.Civ.P. 24(a)(1), because it provides that a creditors' committee "may raise and may appear and be heard on any issue in a case [under Chapter 11]"); United States v. State of Mississippi, 958 F.2d 112, 115 (5th Cir.1992) (contrasting 20 U.S.C. Sec. 1717, which provides that "a parent or guardian of a child ... transported to a public school in accordance with a court order ... may seek to reopen or intervene in the further implementation of such court order," as providing only a conditional right of intervention, with 33 U.S.C. Sec. 1365(b)(1)(B), which provides that "any citizen may intervene as a matter of right," citing Cisneros v. Corpus Christi Indep. Sch. Dist., 560 F.2d 190, 191 (5th Cir.1977), cert. denied, 434 U.S. 1075, 98 S.Ct. 1265, 55 L.Ed.2d 781 (1978), in support of its conclusions concerning 20 U.S.C. Sec. 1717, and United States v. Metropolitan St. Louis Sewer Dist., 883 F.2d 54 (8th Cir.1989), concerning 33 U.S.C. Sec. 1365(b)(1)(B)); Harris v. Reeves, 946 F.2d 214, 222 & n. 10 (3d Cir.1991) (state statute, however unconditional, could only confer an interest in intervention to be weighed under Fed.R.Civ.P. 24(a)(2), because Rule 24(a)(1) "provides that intervention of right exists when a statute of the United States confers an unconditional right to intervene but the rule does not provide for intervention of right when a state statute confers an unconditional right to intervene. Absent a federal statute conferring an unconditional right to intervene, a party's right to intervention under Rule 24(a) is subject to the analysis determined by subsection (2)."); Fuel Oil Supply & Terminaling v. Gulf Oil Corp., 762 F.2d 1283, 1287 (5th Cir.1985) (holding that 11 U.S.C. Sec. 1109(b) does not create an unconditional or "absolute" statutory right to intervene in bankruptcy "adversary proceedings," as distinguished from a bankruptcy "case"); United States v. Hooker Chems. & Plastics, 749 F.2d 968, 977-82 (2d Cir.1984) ("citizen suit" provisions of the Clean Water Act, 33 U.S.C. Sec. 1365, the Safe Drinking Water Act, 42 U.S.C. Sec. 300j-8, and the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6972, provide unconditional right to intervene in most litigation under those acts, but not in suits brought by the United States under its "emergency powers" provisions of these same three acts); and compare International Paper v. Town of Jay, Me., 887 F.2d 338, 340-42 (1st Cir.1989) (court did not reach the issue of whether 28 U.S.C. Sec. 2403, which provides that a state "shall" be permitted to intervene in an action "wherein the constitutionality of any statute of that State affecting the public interest is drawn into question," provided unconditional right of intervention under Rule 24(a)(1), because Sec. 2403 did not apply to the city ordinance in question)
 
 
 [4]
 The Alcan court found the decision in Browning-Ferris unsound, because Sec. 113(f)(3)(C) does not affect contribution rights. Alcan, 25 F.3d at 1184 n. 14
 
 
 [5]
 The Fifth Circuit Court of Appeals defines a "direct, substantial, legally protectable interest in the action" required by Rule 24(a) as an interest that "the substantive law recognizes as belonging to or being owned by the applicant." Cajun Elec. Power Co-op. v. Gulf States Utils., 940 F.2d 117, 119 (5th Cir.1991) (quoting New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464 (5th Cir.) (en banc), cert. denied, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), with emphasis in the original). In the present case, the substantive law does indeed recognize the right to contribution as belonging to the prospective intervenors
 
 
 [6]
 The Fourth Circuit Court of Appeals remarked that "[w]hether an interest contingent upon the outcome of other pending litigation constitutes a 'significantly protectable interest' has been the source of much disagreement." Teague v. Bakker, 931 F.2d 259, 261 (4th Cir.1991). The court found that
 [s]ome courts have concluded that an intervenor must demonstrate more than "a mere provable claim" in order to be entitled to intervention of right, see Independent Petrochemical Corp. v. Aetna Casualty & Sur. Co., 105 F.R.D. 106, 110 (D.D.C.1985), while others have allowed intervention in a dispute between an insurer and its insured even when the intervenor's interest is contingent on the outcome of other litigation. See New Hampshire Ins. Co. v. Greaves, 110 F.R.D. 549 (D.R.I.1986); Hartford Accident & Indem. Co. v. Crider, 58 F.R.D. 15 (N.D.Ill.1973). We find the reasoning of this latter authority persuasive. ERC has sought in its declaratory judgment action a determination that ERC "has no obligation ... with respect to the Teague Class Action." Thus, the Teague Intervenors stand to gain or lose by the direct legal operation of the district court's judgment on ERC's complaint. After seeking a declaratory judgment that it is not liable under the Multimedia Policy with regard to the class action, ERC cannot now be heard to claim that the Teague Intervenors (the class action plaintiffs) lack a sufficient interest to oppose such declaratory judgment. Accordingly, we find that the Teague Intervenors' interest in the subject matter of this litigation is a "significantly protectable interest."
 Id. (emphasis added). In the present case, we find that the prospective intervenors also stand to gain or lose by the direct legal operation of the consent decree, which would subject their contribution claims to the bar found in Sec. 113(f)(2), 42 U.S.C. Sec. 9613(f)(2).
 
 
 [7]
 The district court below did not consider whether the interests of the prospective intervenors were adequately protected in the present litigation, because that court found the prospective intervenors had no interest to protect. However, because we conclude that the prospective intervenors have protectable interests, we must consider the question of whether the identified interests are adequately protected by an existing party. Furthermore, Sec. 113(i) places upon the EPA the burden of showing that the interests of the intervenors were already protected by existing parties. As is discussed below, the EPA cannot carry this burden
 
 
 [8]
 The presumption of adequate representation by an existing party may arise in situations not involving an existing governmental party. The relationship between the existing party and the party seeking to intervene may involve duties each owes the other that are similar to the duties of a governmental entity to protect the interests of its citizens. For example, this court has held that an insured may adequately represent the subrogation interests of its insurer even where the insurer might have additional claims that it would want to pursue in separate litigation if the insured were successful on the initial claim. St. Paul Fire & Marine Ins. v. Helena Marine Serv., 884 F.2d 391, 392-93 (8th Cir.1989). However, where the identity of interest shared by the existing party and the applicant for intervention is called into doubt, the court must reconsider whether intervention should be permitted. J & N Logging Co., 848 F.2d at 1440 (action by existing party that could as a practical matter leave the applicant for intervention solely liable for some share of a judgment on which both were formerly jointly and severally liable required court to reconsider intervention question)
 
 
 [9]
 Fed.R.Civ.P. 24(b) states, in pertinent part, that permissive intervention may be allowed
 (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
 The grant or denial of permissive intervention is in the discretion of the trial court. Sierra Club v. Robertson, 960 F.2d 83, 85 (8th Cir.1992) (citing Walters v. City of Atlanta, 803 F.2d 1135, 1151 n. 16 (11th Cir.1986), for proposition that review of denial of a motion to intervene of right was "for error," but denial of motion for permissive intervention was for abuse of discretion). Permissive intervention must be supported by independent jurisdictional grounds. St. Paul Fire & Marine Ins. v. Helena Marine Serv., 884 F.2d 391, 393 (8th Cir.1989). A court may grant intervention under Fed.R.Civ.P. 24(b) where (1) the movant shows independent ground for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense and the main action have a question of law or fact in common. Greene v. United States, 996 F.2d 973, 978 (9th Cir.1993); Venegas v. Skaggs, 867 F.2d 527, 529 (9th Cir.1989), aff'd, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).