**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILDEARTH GUARDIANS,
a not-for-profit corporation,

       Plaintiff-Appellee,

v.

UNITED STATES FOREST
SERVICE, a federal agency within the
U.S. Department of Agriculture; RICK
CABLES, in his official capacity as
Regional Forester of the U.S. Forest
Service's Rocky Mountain Region;
CHARLES S. RICHMOND, in his
official capacity as Supervisor of the
Grand Mesa, Uncompahgre, Gunnison
National Forest; UNITED STATES
DEPARTMENT OF THE INTERIOR,
a federal agency; C. STEPHEN
ALLRED, in his official capacity
as Assistant Secretary, Land
and Minerals Management,
U.S. Department of the Interior,

       Defendants-Appellees,

    and

MOUNTAIN COAL COMPANY,
L.L.C., a Delaware Limited Liability
Corporation,

       Movant to
       Intervene-Appellant.

No. 09-1089

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:08-CV-02167-JLK)**

Submitted on the briefs:[*]

Stephen D. Bell, Scott P. Sinor, Dorsey & Whitney, LLP, Denver, Colorado, Mike Drysdale, Dorsey & Whitney, LLP, Minneapolis, Minnesota, for Movant to Intervene-Appellant, Mountain Coal Company.

Edward B. Zukoski, Earthjustice, Denver, Colorado, for Plaintiff-Appellee, WildEarth Guardians.

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

**HARTZ**, Circuit Judge.

The appellant, Mountain Coal Company (MCC), owns and operates the West Elk Mine, a large underground coal mine lying beneath the Grand Mesa, Uncompahgre, and Gunnison National Forests in Colorado. After the United States Forest Service approved plans for venting methane gas from the mine, WildEarth Guardians brought suit against the Forest Service, the Department of Interior, and several of their officials under the Administrative Procedure Act,

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

5 U.S.C. §§ 701-706, contending that the approval violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370h. MCC moved to intervene under Federal Rule of Civil Procedure 24. The district court denied the motion and MCC appealed. Because "[a]n order denying intervention is final and subject to immediate review if it prevents the applicant from becoming a party to an action," *Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 839 (10th Cir. 1996) (*Coalition*), we have jurisdiction under 28 U.S.C. § 1291. We conclude that MCC is entitled to intervene as of right, and accordingly we REVERSE the district court's decision and REMAND with instructions to grant MCC's motion to intervene.[1]

## I.      BACKGROUND

The West Elk Mine produces more than six million tons of coal each year. It contains two commercially viable seams of coal, designated the "B Seam" and the "E Seam." Through a competitive leasing process, MCC acquired in 1967 the right to mine both the B Seam and some of the E Seam, and in 1981 it began operations. As the amount of coal in the B Seam dwindled, MCC initiated in 2005 the permitting process for the E Seam. MCC also acquired the right to an additional quantity of E Seam coal.

---

[1]      Because we hold that MCC is entitled to intervene as of right, we need not address the district court's denial of permissive intervention.

Both the B Seam and the E Seam contain significant amounts of methane gas, which is toxic to miners and could cause an explosion in the mine. Therefore, as part of the permitting process, MCC was required to show how it would remove methane from the mine. The primary technique that MCC proposed for ventilating the E Seam was the use of methane-drainage wells (MDWs), which MCC had used in mining the B Seam. An MDW is simply a vertical shaft from the surface to the coal, which allows gas to vent to the atmosphere. The Forest Service, along with other federal agencies, prepared an Environmental Impact Statement and issued a Record of Decision approving the construction of MDWs for the E Seam. In the fall of 2008, MCC began constructing MDWs and mining the E Seam.

WildEarth filed suit, alleging that the defendants had violated NEPA by failing to analyze (1) reasonable alternatives to methane venting, (2) measures to mitigate the environmental impact of methane venting, and (3) the global-warming impact of methane venting. MCC moved to intervene as of right under Rule 24(a)(2), or, in the alternative, permissively under Rule 24(b). WildEarth opposed intervention, and proposed that if intervention were allowed, MCC and the government defendants should be required to confer and coordinate

filings. Although the government took no position on intervention, it did oppose any requirement that it confer or coordinate with MCC.[2]

The district court denied the motion to intervene, finding that MCC had not shown either that the government defendants would not adequately represent MCC's interests or that its interests "as a practical matter" would be impaired or impeded by the litigation. Aplt. App. at 120. MCC appeals that ruling.

## II. ANALYSIS

Rule 24(a)(2) provides for intervention as of right by anyone who in a timely motion "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." There is no dispute that MCC's motion to intervene was timely. We therefore consider only (1) whether MCC has an interest relating to the property that may, as a practical matter, be impaired or impeded by the disposition of the litigation; and (2) whether the existing parties will adequately represent its interest. Our review of these factors is de novo. *See Coalition*, 100 F.3d at 840.

### A. Impairment of Interest

---

[2] The government defendants have chosen not to file a brief before this court.

We "follow[] a somewhat liberal line in allowing intervention." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (internal quotation marks omitted). In our recent en banc decision in *San Juan County v. United States*, we held that "[t]he central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." 503 F.3d 1163, 1193 (10th Cir. 2007). "In short, Rule 24(a)(2), though speaking of intervention 'of right,' is not a mechanical rule. It requires courts to exercise judgment based on the specific circumstances of the case." *Id.* at 1199. "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Utah Ass'n of Counties*, 255 F.3d at 1253 (internal quotation marks omitted). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *San Juan County*, 503 F.3d at 1195 (internal quotation marks omitted).

MCC has met its burden to show the potential for impairment of its interests. The subject of this litigation is mining of the E Seam at the West Elk Mine. MCC already has begun constructing MDWs and mining the seam. In its First Amended Complaint, WildEarth seeks (1) a declaration that the government's approval of the mine expansion and the methane venting violates NEPA and (2) an injunction "setting aside the Defendants' decisions approving or

-6-

consenting to the West Elk mine expansion and methane venting" and "ordering the Defendants to not approve or consent to any expansion of the West Elk Mine and methane venting unless and until the Defendants comply with NEPA." Aplt. App. at 148. If WildEarth is successful in this litigation, operation of the West Elk Mine will be impaired, or even halted. *See id.* at 52 (declaration of MCC's president that entry of WildEarth's injunction "would likely force a halt to mining, because MCC presently knows of no way to safely mine the E Seam without MDWs"). Even just a declaratory judgment could have severe consequences for future mining. *See Utah Ass'n of Counties*, 255 F.3d at 1254 (stare decisis effect of judgment may cause impairment). "The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).

WildEarth relies on *Alameda Water & Sanitation District v. Browner*, 9 F.3d 88 (10th Cir. 1993), to support its contention that MCC lacks the requisite interest. That case, however, presented an unusual circumstance—one unlikely to recur—because the prospective intervenor apparently asserted no interest in the outcome of the case. According to our opinion, the environmental groups seeking to intervene asserted only one interest—namely, that if they became parties, they could offer additional reasons to support the agency's denial of a permit. *See id.* at 91. Noting that such evidence would be irrelevant because the district court's

review would be confined to the agency record, we held that "[t]he opportunity to offer extraneous evidence beyond the administrative record, and thus beyond the scope of the narrow issue before the district court, is not an interest protectable in the underlying action." *Id.* Unlike the environmental groups in *Alameda*, whose sole alleged interest was in submitting evidence, MCC has a direct economic stake in the subject of this litigation. Whether MCC may offer irrelevant materials for consideration by the district court is beside the point on this appeal. The district court, of course, retains its customary authority to exercise control of the conduct of the parties (and intervenors) in the litigation.

### B. Adequate Representation of Interest

The remaining requisite for intervention is that MCC's interest not be adequately represented by the existing parties to the litigation. We have held that the burden to satisfy this condition is "minimal," and that "[t]he possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." *Coalition*, 100 F.3d at 844–45 (alterations and internal quotation marks omitted). "[A]n intervenor need only show the *possibility* of inadequate representation." *Utah Ass'n of Counties*, 255 F.3d at 1254 (emphasis added).

WildEarth argues that because MCC and the government "share the same objective in defending the agency's decision" and because "their economic interests are also generally aligned," Aplee. Br. at 16, the government defendants will adequately represent MCC. We have held, however, that the intervenor's

"showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest." *Utah Ass'n of Counties*, 255 F.3d at 1254. As we have explained,

> the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.

*Id.* at 1255-56; *see also Utahns for Better Transp.*, 295 F.3d at 1117; *Coalition*, 100 F.3d at 845. Moreover, we have recognized that government policy may shift. *See Utah Ass'n of Counties*, 255 F.3d at 1256. In this very case the government has noted the issue. In objecting in district court to any requirement that it coordinate filings with MCC, it wrote: "[T]he Tenth Circuit has recognized that the federal government is inherently responsible for protecting and representing the public interest and that, therefore, its public mission and necessary public neutrality inherently conflict with the interests of intervening private parties." Aplt. App. at 117. We are convinced that MCC has established a possibility of inadequate representation.

We are well aware that the lead opinion in *San Juan County* stated that a presumption of adequate representation should apply "when the government is a

party pursuing a single objective." 503 F.3d at 1204. But only three members of the en banc court joined this portion of the opinion. And more importantly, that statement does not help WildEarth. In *San Juan County* "the Federal Defendants had only a single litigation objective—namely, defending exclusive title to the road—and [the proposed intervenor] could have had no other objective regarding the quiet-title claim." *Id.* at 1206. We were not informed of any potential federal policy that could be advanced by the government's relinquishing its claim of title to the road. Here, in contrast, the government has multiple objectives and could well decide to embrace some of the environmental goals of WildEarth. Therefore, MCC should not be required to rely on the defendants to represent its interests.

## III. CONCLUSION

The judgment of the district court is REVERSED and the case is REMANDED with directions for the district court to grant MCC's motion to intervene.