**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA;
STATE OF OKLAHOMA,

    Plaintiffs - Appellees,

v.

ALBERT INVESTMENT COMPANY,
INC; AMERICAN AIRLINES, INC.;
APAC ARKANSAS, INC.; APAC
OKLAHOMA, INC.; BARTLETT
COLLINS COMPANY; BELL
HELICOPTER;
BRIDGESTONE/FIRESTONE
NORTH AMERICAN TIRE, LLC;
BUTLER AVIATION; CNH
AMERICA LLC, f/k/a Case
Corporation; CHEVRON
ENVIRONMENTAL MANAGEMENT
COMPANY; CITY OF AMARILLO;
CITY OF OKLAHOMA CITY; CITY
OF TULSA; CONOCOPHILLIPS
COMPANY; CRST
INTERNATIONAL, INC.; CUMMINS
SOUTHERN PLAINS, INC.;
SCHLUMBERGER TECHNOLOGIES
CORPORATION DOWELL
SCHLUMBERGER; EMERSON
ELECTRIC COMPANY;
FIBERCAST; FT. JAMES
OPERATING COMPANY; GENERAL
TIRE, INC.; GOODYEAR TIRE &
RUBBER COMPANY;
HALLIBURTON; HOWARD
PONTIAC GMC, INC.; HUDIBERG

No. 08-6267

CHEVROLET, d/b/a Hudiberg Investments; ILLINOIS TOOL WORKS, INC.; IMCO d/b/a General Dynamics OTS, f/k/a Intercontinental Manufacturing Company, Inc.; KAWNEER COMPANY, INC; MARATHON ELECTRIC; NATURAL GAS PIPELINE; OKLAHOMA DEPARTMENT OF MENTAL HEALTH; OKLAHOMA DEPARTMENT OF TRANSPORTATION; ROADWAY EXPRESS, INC.; SEARS ROEBUCK AND COMPANY; SHELL OIL COMPANY; BC IMPORTS, INC., f/k/a Steve Bailey Honda; UE, INC., f/k/a United Engines, Inc.; UNITED PARCEL SERVICE, INC.; WESTERN FARMERS; WILLIS SHAW EXPRESS, INC.; HILTI, INC.; INTERSTATE BRANDS CONTINENTAL BAKING; TYSON FOODS, INC.; WAL-MART STORES, INC.; KRAFT GENERAL FOODS, INC.,

Defendants - Appellees.

_____

UNION PACIFIC RAILROAD COMPANY,

Movant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 08-CV-00637-C)**

William George (Debra Tsuchiyama Baker, Michael Connelly and John Muir of Connelly, Baker & Wotring, L.L.P., Houston, Texas, with him on the briefs) for Movant - Appellant.

Gerald Hilsher of McAfee & Taft, P.C., Tulsa, Oklahoma (Stephen L. Jantzen of Ryan, Whaley, Coldiron, Shandy, P.C., with him on the brief) Oklahoma City, Oklahoma, for Defendants-Appellees.

Joan Pepin, U.S. Department of Justice, Environmental & Natural Resources Division, Appellate Section, Washington, D.C. (Robert H. Oakley and Samuel D. Blesi, of U.S. Department of Justice, Environmental & Natural Resources Division, Appellate Section, Washington, D.C.; Daniel P. Lennington, Office of Attorney General, State of Oklahoma, Oklahoma City, Oklahoma; James A. Bove, Office of General Counsel, Environmental Protection Agency, Washington, D.C.; Pamela J. Travis, Office of Regional Counsel, Environmental Protection Agency, Dallas, Texas; John C. Cruden, Acting Assistant Attorney General, Washington, D.C., on the brief), for Plaintiffs - Appellees.

---

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Movant-Appellant Union Pacific Railroad Co. ("Union Pacific") appeals from the district court's denial of its motion to intervene in an action brought by Plaintiffs-Appellees (United States and the State of Oklahoma) under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA"). "[A]n order denying intervention is final and subject to immediate review if it prevents the applicant from becoming a party to the action." WildEarth Guardians v. U.S. Forest Serv., 573 F.3d 992, 994 (10th Cir. 2009) (internal quotation marks and citation omitted). Therefore, we have

-3-

jurisdiction under 28 U.S.C. § 1291.  Because Union Pacific has an interest in the underlying action, and a statutory right to intervene, we reverse and remand.

Background

When the Missouri Pacific Railroad Company merged with the Missouri-Kansas-Texas Railroad Company ("MKT") in 1989, it acquired from the MKT a 12-acre lot in Oklahoma City.  The Missouri Pacific, and the MKT before it, leased the lot to the Double Eagle Refining Company and Double Eagle Lubricants, Inc., which used the property to re-refine waste oil.  Aplees. Supp. App. A-2 to A-3.  These operations contaminated the Double Eagle site with various hazardous substances.  Aplees. Supp. App. A-3.  In 1989, the United States Environmental Protection Agency added the site to its National Priorities List.  Between 1989 and 1999, the EPA and the Oklahoma Department of Environmental Quality spent more than $30 million cleaning up the groundwater and surface waste at the site.

The Union Pacific Railroad Company acquired the Double Eagle Superfund Site in 2003, as part of its merger with the Missouri Pacific Railroad Company.  Aplees. Supp. App. A-3.  In 2006, the United States and the State of Oklahoma (collectively, the "government") sued Union Pacific for unreimbursed cleanup costs and natural resources damages related to the Double Eagle site under CERCLA's damages provisions, 42 U.S.C. § 9607(a)(2)-(3).  Aplees. Supp. App.

-4-

A-4 to A-8. The government sought to hold Union Pacific jointly and severally liable for the entire damages. Aplees. Supp. App. A-6 to A-8. That action is pending.

In the action underlying this appeal, the government sued Defendants-Appellees, some 44 other potentially responsible parties (PRPs), for the entire cleanup costs and natural resources damages at the Double Eagle site. Aplt. App. A-18 to A-28. Although the limitations period on the government's friendly suit had already run, the government lodged a consent decree less than a week later. Aplt. App. A-29 to A-109; corrected at Aplt. App. A-110 to A-183. The consent decree memorialized a settlement agreement that the 44 defendants would enjoy immunity from contribution actions or claims for the Double Eagle site, as provided by § 113(f)(2) of CERCLA, 42 U.S.C. § 4613(f)(2). Aplt. App. A-49. The settling defendants would collectively pay nearly $6.5 million, ranging from $49,680 to $625,586 per defendant. Aplt. App. A-103 to A-106. The consent decree provided for a 30-day notice and comment period. Aplt. App. A-53 to A-54. The United States published the notice in the Federal Register. 73 Fed. Reg. 41118 (July 17, 2008). Union Pacific timely submitted the sole comments opposing the consent decree. Aplt. App. at A-195 to A-206.

On October 10, 2008, Union Pacific filed a motion to intervene as of right in the underlying action pursuant to Fed. R. Civ. P. 24(a)(2), and CERCLA § 113(i), 42 U.S.C. § 9613(i). Aplt. App. A-184 to A-207. Alternatively, Union

Pacific asked the district court to allow permissive intervention under Fed. R. Civ. P. 24(b)(1)(A). Aplt. App. A-192. Union Pacific pointed to its potential contribution rights against the settling defendants and argued that it is entitled to protect those legally cognizable interests. Aplt. App. A-190. According to Union Pacific, because the government's claims against the settling defendants are already time-barred, the primary purpose and effect of the consent decree is for the settling defendants to "obtain immunity from Union Pacific's CERCLA contribution claims." Aplt. App. A-187. Both the government and the settling defendants opposed Union Pacific's motion to intervene. Aplt. App. A-208 to A-275.

On December 11, 2008, the district court denied Union Pacific's motion, concluding that Union Pacific did not have a legally sufficient interest to justify intervention as of right. Aplt. App. A-327. The district court also denied permissive intervention because "permitting Union Pacific to intervene at this stage would unduly delay the settlement and would prejudice the rights of Plaintiffs and Defendants . . . ." Aplt. App. A-328. Union Pacific appealed the denial. Aplt. App. A-329.

<u>Discussion</u>

We review the denial of a motion to intervene as of right de novo and denial of a motion for permissive intervention for an abuse of discretion.

DeJulius v. New England Health Care Employees Pension Fund, 429 F.3d 935, 942 (10th Cir. 2005) (citing City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1042 (10th Cir. 1996)).  The government suggests that we review a motion to intervene as of right for abuse of discretion because San Juan County v. United States, 503 F.3d 1163 (10th Cir. 2007) (en banc), adopted a more practical, fact-based approach to the interest requirement for such motions.  Fed. & State Aplees. Br. ("Gov't Br.") at 13-14.  We cannot agree; we have consistently  reviewed denials of motions to intervene as of right using a de novo standard.  San Juan County, 503 F.3d at 1199 ("No party has suggested that our review is other than de novo ....."); WildEarth Guardians, 573 F.3d at 995 ("Our review of these factors is de novo.").

A.  CERCLA

Because Union Pacific claims that CERCLA establishes its interest in the underlying suit, we begin with that statute's recovery and contribution provisions. CERCLA provides two means for private parties to recover costs associated with cleaning up hazardous substances.  First, § 107 of CERCLA authorizes private parties as well as state and federal governments to recover the costs of a cleanup from potentially responsible parties ("PRPs").  42 U.S.C. § 9607(a).  The government brought suits against Union Pacific and the 44 settling defendants under this provision.  The second provision, § 113 of CERCLA, is the one at the center of this appeal.  42 U.S.C. § 9613(f).  Section 113(f) provides a limited

-7-

right for one responsible or potentially responsible party to seek contribution from other responsible or potentially responsible parties. Union Pacific's contribution right is created by § 113(f)(1), which provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

Id. § 9613(f)(1). Section 113(f)(2) limits that contribution right, cutting it off against PRPs who settle with the government:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

Id. § 9613(f)(2). No one disputes that the consent decree with the 44 settling defendants would trigger § 113(f)(2) and eliminate Union Pacific's contribution right as to the settling defendants. For that reason, Union Pacific seeks to intervene in the underlying suit.

## B. Intervention as of Right

Union Pacific sought intervention as of right under both Federal Rule of

Civil Procedure 24(a)(2) and CERCLA. Rule 24(a)(2) provides intervention as of right to anyone who, "[o]n timely motion, . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24. We have summarized the requirements for intervention as of right as: "(1) the application is 'timely'; (2) 'the applicant claims an interest relating to the property or transaction which is the subject of the action'; (3) the applicant's interest 'may as a practical matter' be 'impaired or impeded'; and (4) 'the applicant's interest is [not] adequately represented by existing parties.'" Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1249 (10th Cir. 2001) (alteration in original) (quoting Coalition of Arizona/New Mexico Counties v. Dep't of Interior, 100 F.3d 837, 840 (10th Cir. 1996)).

Section 113(i) of CERCLA sets out a nearly identical intervention as of right.

> In any action commenced under this chapter [CERCLA] . . . in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i). The only difference between CERCLA's intervention provision and Rule 24's intervention as of right is that CERCLA places the

burden of demonstrating that the existing parties adequately represent the potential intervenor's interests on the government instead of the movant. United States v. Union Elec. Co., 64 F.3d 1152, 1158 (8th Cir. 1995); United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994).

Because both Rule 24(a)(2) and CERCLA require the same elements for intervention as of right, we examine each element in turn.

1. Timeliness

The Appellees do not dispute that Union Pacific's motion to intervene was timely. As noted by the district court, Union Pacific filed its motion shortly after the action was filed in the district court and before any scheduling order. Aplt. App. A-1 to A-14, A-325.

2. Sufficient Interest

The central dispute in this case is whether Union Pacific's contribution right is an interest legally sufficient for intervention as of right. The district court determined that Union Pacific's interest in its contribution right was not legally sufficient. Aplt. App. A-327. Although the district court noted that the consent decree would extinguish Union Pacific's contribution right, it declined to follow the Eighth Circuit's holding that a non-settling PRP's contribution right under CERCLA is sufficient for intervention. Aplt. App. A-326 (discussing Union Elec., 64 F.3d at 1166). Instead, the district court adopted the reasoning used by the Central District of California in United States v. Acorn Engineering Co., 221

F.R.D. 530, 534 (C.D. Cal. 2004). According to the district court, the <u>Acorn Engineering</u> court deemed § 113(i) ambiguous "and thus consideration of the legislative history is appropriate." Aplt. App. A-326. The district court continued, "Upon consideration, that 'legislative history demonstrates that non-settling PRPs seeking intervention in order to undermine the consent decree and protect their contribution interests were specifically intended to be exempted from the coverage provided by section 113(i).'" Aplt. App. A-326 (quoting <u>Acorn Eng'g</u>, 221 F.R.D. at 536). The court added that intervention in this case would skew CERCLA's early settlement incentives because it would delay the government's settlement with these 44 defendants. "That Union Pacific was unable to reach a settlement does not now create a right to interfere in the settlement reached by the other parties." Aplt. App. A-327.

We recently reconsidered what interests are legally sufficient for intervention as of right. In <u>San Juan County</u>, the en banc court said that the interest requirement is "not a mechanical rule. It requires courts to exercise judgment based on the specific circumstances of the case." 503 F.3d at 1199. At minimum, "[t]he applicant must have an interest that could be adversely affected by the litigation. But practical judgment must be applied in determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." <u>Id.</u>

Subsequently, we applied <u>San Juan County</u>'s practical standard to economic

interests. WildEarth Guardians, 573 F.3d at 995. In WildEarth Guardians, a mine owner sought intervention as of right in an environmental group's suit opposing the Forest Service's plans to vent methane gas from the owner's mine. Id. at 994. This court reversed the district court's denial of intervention, based on the mine owner's economic stake in the litigation. "If WildEarth is successful in this litigation, operation of the West Elk Mine will be impaired, or even halted." Id. at 995. We explained that "'[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest.'" Id. at 996 (quoting Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002)).

Union Pacific argues that its statutory right to contribution under CERCLA is a sufficient interest for intervention as of right. As noted, if the district court approves the settlement, § 113(f)(2) of CERCLA would eliminate the settling defendants' contribution liability to Union Pacific. 42 U.S.C. § 9613(f)(2). In the government's separate suit against Union Pacific, it seeks to hold Union Pacific jointly and severally liable for the entire $30 million in damages, offset by the nearly $7 million in damages in the consent decree in this matter. Aplt. Br. at 23. If the court enters the consent decree, Union Pacific will not have an opportunity to seek contribution from the settling defendants.

This court has never decided whether a non-settling PRP's contribution right under CERCLA is a legally sufficient interest for intervention in a consent

-12-

decree with other settling defendants.  However, Union Pacific points to another circuit that has considered this question.  Aplt. Br. at 27-28.  In United States v. Union Electric Co., the Eighth Circuit held that a non-settling PRP's contribution interest is "substantial and legally protectable."  64 F.3d at 1166.  The Eighth Circuit concluded that these situations warrant intervention "precisely because § 113(f)(2) would cut off the interest established by § 113(f)(1) . . . ."  Id. at 1166-67.  That potential harm "creates a direct and immediate interest on the part of the non-settling PRPs in the subject matter of the litigation."  Id. at 1167.  Further, the Eighth Circuit rejected the argument put forth by the government and the settling PRPs that a non-settling PRP's contribution interest was "too contingent" on a chain of events.  Id.  Rather, the interest is present and not dependent on any future events: "[N]o finding of liability is required, nor assessment of excessive liability, before the contribution interest arises.  Only the *recovery* on a contribution claim must await the outcome of this or further litigation, not the right to bring such a claim."  Id.  The potential intervenor needs only to be "identified as a PRP to support intervention."  Id.

The government and the settling defendants offer four main arguments why this court should find that Union Pacific's interest in its CERCLA contribution right is not legally sufficient for intervention as of right.

First, the government argues that contribution under § 113(f)(1) is a "qualified right" that the statute makes unavailable against the settling

-13-

defendants. Gov't Br. at 18. The government argues that one must read subsections (1) and (2) of § 113(f) as a whole "for a complete understanding of the contribution right." Gov't Br. at 19. Because CERCLA itself circumscribes the contribution right that it creates, the government claims, Union Pacific's contribution right has always been impaired. Gov't Br. at 18-19. A district court has applied this reasoning to find that CERCLA's contribution right is not a "direct, substantial, legally protectable interest." United States v. Browning-Ferris Indus. Chem. Servs., Inc., 1989 U.S. Dist. LEXIS 16596, at *8-9 (M.D. La. Nov. 15, 1989). The Government correspondingly argues that Union Electric was wrongly decided because the Eighth Circuit in that case did not consider whether § 113 limits the contribution right. Gov't Br. at 35-38.

We read § 113(f) as a whole and find that a contribution right exists until settlement with the government eliminates that right. That the statute, rather than the settlement, impairs the right upon a certain event does not mean that Union Pacific never has an interest in the underlying litigation. If anything, the fact of statutory impairment means that approval of the consent decree will certainly impair the right.

The government also applies its "qualified right" interpretation to claim that a subsequent Eighth Circuit decision undermines Union Electric because the court held that § 113(f)(1) is "at all times limited by" § 113(f)(2). Gov't Br. at 19 (quoting United States v. BP Amoco, 277 F.3d 1012, 1015 (8th Cir. 2002)). BP

-14-

Amoco in no way amended Union Electric's holding that a non-settling PRP has a sufficient interest for intervention as of right.  In BP Amoco, a party that had already intervened claimed that § 113(f)(2)'s contribution bar constituted an unconstitutional taking.  BP Amoco, 277 F.3d at 1017.  But BP Amoco considered a very different question: whether a vested property interest existed.  Id.  The court found that the party lacked a vested property interest given the limitation of § 113(f)(2).  Id.  These tests are distinct.  Of course, one claiming an economic interest may lack a present, vested property interest for the purposes of challenging a taking but still have a legally sufficient interest for intervention as of right.  BP Amoco presents that very situation: the district court allowed a non-settling PRP to intervene in a proposed consent decree between the government and settling PRPs.  Id. at 1015.  While the intervenor had a sufficient economic interest to intervene, his contribution right had not vested into a property interest for the government to take.  Id. at 1017.

Second, the government and the settling defendants, like the district court, argue that § 113(i) is ambiguous and that such ambiguity allows courts to consider legislative history in interpreting that provision.  Unsurprisingly, they also claim CERCLA's legislative history indicates that courts should deny intervention as of right in this situation.  Gov't Br. at 21-38; Defendants/Appellees' Br. ("Aplees. Br.") at 23-42.  These arguments depend heavily on the same district court case that the district court below used, Acorn

Engineering, and clash with the Eighth Circuit's decision to the contrary in Union Electric.

"As we always do in cases requiring statutory construction, we begin with the plain language of the law." United Keetoowah Band of Cherokee Indians of Okla. v. U.S. Dep't of Hous. & Urban Dev., 567 F.3d 1235, 1241 (10th Cir. 2009) (internal quotation marks and citation omitted). "We must assume that the ordinary meaning of the words Congress uses conveys its intent. Furthermore, where the language of the statute is plain, it is improper for this Court to consult legislative history in determining congressional intent." Id. (internal quotation marks and citation omitted). We look to legislative history to construe a statute only when its language is ambiguous.

Surprisingly, given their reliance on this argument, neither the government nor the settling defendants identify precisely what language in § 113(i) is ambiguous. The government points only to the conflicting case law as "*prima facie* evidence that reasonably well-informed persons can differently interpret" the provisions. Gov't Br. at 22. In their brief, the settling defendants barely improve upon the government's circular reasoning. Their sole evidence of ambiguity consists of Acorn Engineering's determination that § 113(i) is facially ambiguous. Aplee. Br. at 27 (excerpting Acorn Eng'g Co., 221 F.R.D. at 535-36). The relevant portion of § 113(i) reads: "any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and

-16-

is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest." 42 U.S.C. § 9613(i). Acorn Engineering acknowledged that "any person" is unambiguous, but commented with respect to the rest of the subsection, "To say that this language is 'plain' on its face is nothing short of absurd." However, beyond this conclusory statement, the Acorn Engineering court failed to specify which word or words are ambiguous.

The collective failure to identify the ambiguities in § 113 makes resorting to legislative history problematic. Section 113(i) is clear: any intervenor must have an interest in the ongoing litigation, such that the outcome of that case may impair that interest. Although this language is very broad, a statute's breadth does not make it ambiguous.

What's more, the legislative history put forth by the government and the settling defendants does not convince us that Congress intended that non-settling PRPs could not intervene. The Appellees point to proposed versions of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), which restricted Section 113(i) to persons claiming "a direct public health or environmental interest" in the litigation. Aplees. Br. at 35; Gov't Br. at 23-24 (citing H.R. Rep. No. 99-253(III), at 24 (1985), reprinted in 1986 U.S.C.C.A.N. 3038, 3047). Congress did not pass that bill, however. The law that Congress passed does not contain the proposed limitation on intervention, which leads us to

conclude that Congress intended the broad intervention right that it created. After all, "[w]e must assume that the ordinary meaning of the words Congress uses conveys its intent." United Keetoowah Band, 567 F.3d at 1241. While Congress may have primarily intended to extend the intervention right to those affected by contamination, no language suggests an intent to prevent intervention by non-settling PRPs. The decision in Acorn Engineering likewise provides no contrary legislative history.

The government and the settling defendants also attempt to show a "general legislative intent" in the text and legislative history of CERCLA and SARA to encourage early settlement. Gov't Br. at 28-29; Aplee. Br. at 28-30. If non-settling PRPs could intervene in the action underlying the settlement between other PRPs and the government, litigation expenses would increase and, so their argument goes, settlement incentives would decrease. Gov't Br. at 28. The Appellees claim that the policy preference for early settlement forbids intervention in this situation. Acorn Engineering used this same policy rationale to justify its denial of intervention, 221 F.R.D. at 536-37, as did the district court below. Aplt. App. at A-326 to A-327 (citing United States v. ABC Indus., 153 F.R.D. 603, 607 (W.D. Mich. 1993); Arizona v. Motorola, Inc., 139 F.R.D. 141, 146 (D. Ariz. 1991); United States v. Beazer East, Inc., Nos. 5:90 CV 1167, 5:90 CV 1168, 1991 WL 557609, at *3 (N.D. Ohio Mar. 6, 1991); United States v. Mid-State Disposal, Inc., 131 F.R.D. 573 (W.D. Wis. 1990)).

This argument suffers from the same inadequacies as the more specific appeal to legislative history. First, no ambiguity in § 113 opens the door to legislative history. Second, the legislative history does not demonstrate congressional intent against intervention by non-settling PRPs. Intervention can be read consistently with a policy for prompt settlement:

> [T]he incentive to prompt settlement in § 113(f)(2) remains intact; it simply is not the sole purpose of § 113 taken as a whole. By its terms, subsection 113(f)(1) provides for contribution, subsection 113(f)(2) provides for the termination of that interest as to settling PRPs, and subsection 113(i) provides for intervention to protect that and other interests of persons affected by the litigation.

Union Electric, 64 F.3d at 1166. A brief delay for the court to consider a non-settling PRP's interest is not inconsistent with a general goal of early settlement and might actually result in decreased litigation costs.

More importantly, CERCLA specifically provides for, and therefore contemplates, any delay caused by intervention. Reading CERCLA's general intent to encourage early settlement as always defeating intervention by non-settling PRPs would require us to ignore § 113(i). Section 113(i) not only allows intervention, but also requires intervention to be timely. Any delay is properly considered under intervention's timeliness requirement, instead of being confused with the existence of an interest. This confusion has led the district courts cited by the court below to deny intervention. See ABC Industries, 153 F.R.D. at 607 ("treating this interest as a 'direct' one would confer all nonsettling PRPs who are

somehow financially affected by a *de minimis* settlement agreement the right to intervene to a litigation at the time *when it is almost at a close*") (emphasis added); Motorola, 139 F.R.D. at 145 (quoting Beazer East, 1991 WL 557609, at *4 (barring a non-settling PRP's intervention because it could intervene at the last moment, delay cleanup, and "effectively thwart the settlement process")). But see Mid-State Disposal, 131 F.R.D. at 576-77 (denying intervention because of untimeliness and adequacy of public notice and comment). We cannot ignore Congress's balance between § 113(i) and early settlement, despite some district courts' willingness to the contrary. In addition, intervention as of right "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." San Juan County, 503 F.3d at 1189; see also Beauregard, Inc. v. Sword Servs., LLC, 107 F.3d 351, 352-53 (5th Cir. 1997) ("It is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right."). The district court has the ability to lessen any potential delay by denying discovery or by denying an evidentiary hearing. See Motorola, 139 F.R.D. at 148 (denying discovery in settlement matter); Dravo Corp. v. Zuber, 804 F. Supp. 1182, 1187 (D. Neb. 1992) (same); United States v. Union Electric, 132 F.3d 422, 430 (8th Cir. 1997) (denying evidentiary hearing); BP Amoco, 277 F.3d at 1017 (district court denial of discovery did not abuse discretion where intervenor had a "meaningful and sufficient opportunity to present arguments and submit evidence

-20-

in opposition"); <u>United States v. Cannons Eng'g Corp.</u>, 899 F.2d 79, 94 (1st Cir. 1990) (no abuse of discretion where intervenor had opportunity to argue fully the issues and did not advise court of particular matter requiring live testimony).

Congress's overall legislative goals support intervention in this situation. Congress designed CERCLA to promote both "timely cleanup . . . and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." <u>Burlington N. & Santa Fe. Ry. Co. v. United States</u>, 129 S. Ct. 1870, 1874 (2009) (internal quotation marks and citations omitted). Allowing intervention furthers the latter of those goals because Union Pacific will have the opportunity to argue that the consent decree will result in it paying more than its fair share of the cleanup costs. In this case, intervention is consistent with a timely cleanup because the government has already remedied the hazardous waste at the Double Eagle site. Although certainly not dispositive, any delay at this stage only postpones the allocation of costs and does not endanger the public health. In sum, the legislative history simply does not support the argument that Congress intended to foreclose intervention by non-settling PRPs.

The third main argument against intervention is that Union Pacific's interest in its contribution right is "too remote, speculative and contingent to warrant intervention." Gov't Br. at 44-46; <u>see also</u> Aplee. Br. at 50-52. To recover contribution from the settling defendants, Union Pacific must first be found liable in the separate suit, be held liable for a disproportionate share of the

-21-

cleanup costs, and then establish the settling defendants' liability. Gov't Br. at 44-45.

That causal chain might be too attenuated for intervention as of right if Union Pacific sought to protect some specific dollar value that it might obtain from the settling defendants. But Union Pacific seeks to protect a substantive right that currently exists: the statutory right to seek contribution from the settling defendants. CERCLA allows any PRP to bring contribution claims against other PRPs before it is held liable. 42 U.S.C. § 9613(f)(1); Union Electric, 64 F.3d at 1167 ("[N]o finding of liability is required, nor assessment of excessive liability, before the contribution interest arises.").

Fourth, the settling defendants argue that Union Pacific's lack of participation in settlement negotiations supports denial. Aplee. Br. at 42-43. If non-settling PRPs could intervene in consent decree approval actions, so the argument goes, "they could effectively hold hostage the efforts of the government in effectuating the stated purpose of CERCLA." Aplee. Br. at 42. The district court below similarly stated, "Here, Union Pacific was invited to participate in the settlement negotiations. That Union Pacific was unable to reach a settlement does not now create a right to interfere in the settlement reached by the other parties." Aplt. App. at A-327.

The converse is actually more accurate: that Union Pacific did not settle does not diminish its right to intervene. Union Pacific's decision not to settle is

not relevant to the existence of its interest in this litigation. Union Pacific could intervene in this action only when the other parties settled and the government filed the lawsuit and proposed consent decree. Union Pacific moved to intervene in this suit in a timely manner. Its strategic decision not to settle before the government brought this suit does not damage its interest in the suit or its right to intervene.

None of the arguments dissuade us that Union Pacific has an interest legally sufficient for intervention as of right. Union Pacific has a present right to pursue the settling defendants, as fellow PRPs, for contribution. That contribution right is "an interest relating to the subject of" the underlying action, as required by both Rule 24(a)(2) and § 113(i) of CERCLA. This interest is sufficient under San Juan County, which only looks to see whether the potential intervenor's interest could be adversely affected by the litigation. 503 F.3d at 1199. San Juan County requires the court to weigh the strength of Union Pacific's interest and the potential risk of injury. Id. Both point toward intervention. The government seeks to hold Union Pacific liable for the full cost of cleanup, minus the offset from the proposed settlement, a total of about $23 million. The statute recognizes an important interest in seeking contribution to share that burden. The risk of injury is great because judicial approval will automatically cut off the right to seek contribution from the settling defendants as PRP's. WildEarth Guardians also supports this analysis because the "threat of

-23-

economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." 573 F.3d at 996 (internal quotation marks and citations omitted). An interest in preventing an economic injury is certainly sufficient for intervention as of right.

### 3. Impairment of Interest

We next examine whether the disposition of this action may impair or impede Union Pacific's ability to protect its interest, its statutory right to seek contribution. Given the nature of Union Pacific's contribution right, the disposition of this action will likely bar Union Pacific from protecting its interest vis-a-vis these settling defendants. By CERCLA's terms, a settling party "shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). Here, the consent decree directly addresses the liability of the settling defendants as to the cleanup of the Double Eagle site. If the court approves the consent decree, Union Pacific will be barred from seeking contribution from any of the settling defendants if Union Pacific is later found liable in its own action with the government. Therefore, as a practical matter, Union Pacific's interest may be impeded by the disposition of the case.

The government argues that denial of intervention will minimally affect Union Pacific because intervention will give Union Pacific only the ability to brief the court as a party, not to veto the settlement. Gov't Br. at 39. This argument misstates the purpose and requirements of intervention as of right.

-24-

Although the court may ultimately decide against Union Pacific and still extinguish its contribution right (as to the settling defendants) by approving the settlement, that does not make Union Pacific any less interested or its interest any less impaired by the disposition of the case. "Allowing Union Pacific to intervene does not mean that it can veto the settlement. Union Pacific is only asking for a 'seat at the table and an opportunity to speak its piece.' The district court can still approve the consent decree if it finds that the settlement is reasonable, fair and consistent with CERCLA." Aplt. Br. at 46 (quoting United States v. ExxonMobil Corp., C.A. No. 1:07-cv-00060, 2007 WL 4563490, at *5 (D.N.H. Dec. 20, 2007)). Thus, while Union Pacific is not guaranteed a victory and the district court may, in the appropriate use of its discretion, deny discovery or an evidentiary hearing, Union Pacific may fully participate as a party in the litigation. See San Juan County, 503 F.3d at 1209 (Kelly, J., concurring) ("[Intervenors] are given the opportunity to make arguments, present evidence, register objections, and appeal adverse decisions.").

The notice-and-comment mechanism is not an adequate substitute for intervention, contrary to the government's claims. Gov't Br. at 39. The government solicits comments regarding proposed consent decrees as a matter of practice. Gov't Br. at 11 n.6. Union Pacific submitted comments to the Attorney General within the comment period, and the Department of Justice will file them with the district court. Id. As Judge Lucero observed during oral arguments,

-25-

however, the government is free to ignore the comments because the notice-and-comment mechanism is not statutorily mandated.   The district court may also disregard Union Pacific's comments in the absence of any requirement to consider them or any appellate review of the court's consideration of comments.  The failure to consider adequately an intervenor's objections, on the other hand, is subject to appellate review.  San Juan County, 503 F.3d at 1209 (Kelly, J., concurring).  For these reasons, Union Pacific's ability to protect its interests will be impaired if it is not a party to this action.

4.  Adequate Representation

The final requirement for intervention as of right is that Union Pacific's interests are not adequately represented by the existing parties.  As noted above, in the CERCLA context, the burden rests with the government to demonstrate that Union Pacific's interests are sufficiently represented.  See 42 U.S.C. § 9613(i).  The government admits that it does not adequately represent Union Pacific's interests.  Gov't Br. 16 n.7.  Because the parties to this appeal do not dispute this requirement, it favors intervention as of right.

Because Union Pacific has demonstrated all four requirements for intervention as of right—timeliness, interest, impairment, and inadequate representation— the district court erred in denying the motion for intervention as of right, and on remand Union Pacific shall be allowed to intervene.  Because we find that Union Pacific has a right to intervene, we do not reach the district

-26-

court's denial of the motion for permissive intervention.

REVERSED and REMANDED.  All pending motions are DENIED.