FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 25, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STATEWIDE MASONRY,

      Plaintiff-Counter-
      Defendant-Appellee,

v.

JAMES R. ANDERSON; QM
COMPANY, INC., A Colorado company,

      Defendants-
      Counterclaimants-
      Third-Party Plaintiffs,

v.

VIRGINIA ADENT; KENNETH
ADENT,

      Third-Party Defendants,

------------------------------

QM OF WYOMING, a Wyoming
corporation,

      Intervenor-Appellant.

No. 12-8045
(D.C. No. 1:12-CV-00022-SWS)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral

(continued)

Before **HARTZ**, **EBEL**, and **GORSUCH**, Circuit Judges.

QM of Wyoming appeals from a district court order denying its motion to intervene in this diversity action arising out of a construction project in Wyoming. Plaintiff Statewide Masonry (Statewide), a Wyoming corporation, brought suit asserting claims for breach of contract and quantum meruit against defendant QM Company, Inc. (QM of Colorado), a Colorado corporation, and a claim for fraud against defendant James R. Anderson, a Colorado resident who is president of both QM of Colorado and QM of Wyoming. We have jurisdiction under 28 U.S.C. § 1291, *see WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 994 (10th Cir. 2009), and affirm for the reasons stated below.

## I. BACKGROUND

The relevant allegations of the complaint are as follows. Statewide contracted with QM of Colorado to install concrete masonry units, grout, and punch list items for the St. Anthony's Tri-Parish School Project in Casper, Wyoming (St. Anthony's Project). Statewide completed its work, but QM of Colorado breached the contract by refusing to pay the remaining $349,771.88 it owed to Statewide. Alternatively, the reasonable value of the uncompensated work done by Statewide at QM of

estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

- 2 -

Colorado's request was $364,234.00, for which a quantum meruit recovery would be appropriate. Finally, during the performance of the work for QM of Colorado, James R. Anderson knowingly made false representations to Statewide regarding progress payments and lien waivers on the project with the intent and effect of inducing detrimental reliance, resulting in substantial financial harm to Statewide.

Shortly after this action was filed, defendants QM of Colorado and James R. Anderson moved to dismiss under Federal Rules of Civil Procedure 12(b)(7) and (19), urging the district court to find that QM of Wyoming was a necessary party whose joinder would defeat diversity jurisdiction. The primary basis for the motion was that Statewide owed QM of Wyoming money: it had entered into a financial agreement obligating it to split its gross margins 80%-20% with QM of Wyoming, to which it also owed a substantial sum for unpaid loans. Defendants argued that a failure to join QM of Wyoming would harm both QM companies:

> First, because QM of Wyoming is not a named party to this litigation, QM of Wyoming will not be able to collect the outstanding loan proceeds owed by Statewide Masonry to QM of Wyoming. Second, QM [of Colorado] will not be able to off-set any of the outstanding loans made by QM of Wyoming or work performed by QM of Wyoming against any monies found to be owing to Statewide Masonry as a result of the St. Anthony's Tri Parish School project. Without joining QM of Wyoming, the Court cannot accord complete relief among the existing parties and failure to join QM of Wyoming will impede QM of Wyoming's ability to protect its interests in its loan proceeds.

App. Vol. I at 28. Noting that the subject matter of this suit brought by Statewide against QM Colorado and James R. Anderson was distinct from any financial

- 3 -

obligations owed by Statewide to QM of Wyoming, the district court rejected

defendants' argument and denied the motion to dismiss:

> Under ordinary circumstances, a person does not become indispensable in contract actions simply because that person's rights under an entirely separate contract will be affected. See *Francis Oil & Gas Company, Inc. v[.] Exxon Corp.*, 661 F.2d 873, at 878 [(10th Cir. 1981)].

> Here, the duties and obligations under the contract for the St. Anthony's Tri-Parish Project and under which Statewide Masonry has sued are limited to Statewide Masonry and QM [of Colorado]. Therefore, the duties and obligations relevant thereto will be those that are determined in this matter and do not involve the other agreements or the obligations that exist separate and apart, the other contractual duties between QM of Wyoming and Statewide Masonry.

*Id.* at 181.

QM of Wyoming then moved to intervene in the action, as of right under

Fed. R. Civ. P. 24(a)(2), and permissively under Fed. R Civ. P. 24(b)(1)(B). For the

former, the movant must "claim[]an interest relating to the property or transaction

that is the subject of the action, and [be] so situated that disposing of the action may

as a practical matter impair or impede the movant's ability to protect its interest,

unless existing parties adequately represent that interest." The requisite interest here

tracks that required for joinder under Rule 19(a). *Navajo Tribe of Indians v. New

Mexico*, 809 F.2d 1455, 1472 n.25 (10th Cir. 1987) (noting interest that satisfied

Rule 19(a) would perforce satisfy Rule 24(a)); *United Keetoowah v. United States*,

480 F.3d 1318, 1324 n.3 (Fed. Cir. 2007) (same). Thus, in denying intervention as of

- 4 -

right, the district court referred back to its earlier ruling that QM of Wyoming lacked the necessary interest in the litigation to be an indispensable party:

> This Court has already determined QM of Wyoming does not satisfy the definition of necessary party under Rule 19(a) because its absence from this litigation will not impair or impede its ability to protect its separate contractual interests. This finding forecloses QM of Wyoming's ability to intervene under Rule 24(a)(2).

App. Vol. II at 348-49. Thus, the district court denied intervention as of right because QM of Wyoming's protection of its interests, which are dependent upon contract rights separate from the contract at issue in this case, did not require its participation in the litigation.

For permissive intervention, Rule 24(b)(1)(B) affords the district court discretion to allow intervention by a nonparty who "has a claim or defense that shares with the main action a common question of law or fact." Noting that the main action here related to work on the St. Anthony's Project pursuant to an alleged contract that did not involve QM of Wyoming, whose claims against Statewide arose out of separate and distinct contractual obligations, the district court concluded that permissive intervention was also inappropriate. App. Vol. II at 349.

## II. ANALYSIS

We review the denial of intervention as of right de novo and the denial of permissive intervention for abuse of discretion. *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009). We take up each ruling in turn below.

- 5 -

## A. Intervention as of Right

We agree with the district court's conclusion that QM of Wyoming failed to demonstrate its right to intervene under Rule 24(a). Although the district court treated QM of Wyoming's asserted interest in the litigation as a single undifferentiated matter—a claim against Statewide based on collateral contract rights—we distinguish between two arguably different types of economic interest supporting QM of Wyoming's motion for intervention. These interests warrant distinct treatment.

### 1. Creditor's general economic interest versus intrinsic economic interest in the subject matter of the action

QM of Wyoming is a creditor of Statewide, which allegedly owes it a substantial sum in loan obligations. Thus, any financial gain accruing to Statewide may lead to a financial benefit to QM of Wyoming in terms of a source of recovery. In that general sense, QM of Wyoming could be said to have an interest in any monetary claims successfully asserted by Statewide in this (or any other) case. As a more specific matter, QM of Wyoming also asserts a contract right to 20% of Statewide's gross margins in several building projects, including the project at issue here.

Addressing joinder and intervention, many courts loosely say that "a mere economic interest is not enough" to warrant inclusion of a nonparty. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009) (internal quotation marks omitted) (citing cases); *see also Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of*

*Fisherman's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). "[T]hat is a confusing formulation—most civil litigation is based on nothing more than an 'economic interest.'" *Flying J, Inc.*, 578 F.3d at 571. Indeed, this circuit recognizes that an economic interest *can* support intervention, *see United States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009), though, of course, "'practical judgment must be applied in determining whether the strength of the interest and the potential risk of injury to that interest justify intervention,'" *id.* at 1392 (quoting *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc)). But "all that the [other courts] mean is that the fact that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit—maybe you're a creditor of one of them—does not entitle you to intervene in their suit." *Flying J, Inc.*, 578 F.3d at 571 (citing cases). Otherwise, any suit potentially involving financial gain or loss—a great deal of civil litigation—would be subject to intervention by anyone to whom any of the parties owed money. None of our cases have extended the notion of an economic interest supporting intervention to that extreme.

While intervention may not be based on a creditor's mere anticipation that a debtor's success in a lawsuit will at some point redound to its own economic benefit, there are circumstances in which intervention may be supported by a more focused economic interest *in the subject matter of the litigation*–which is the focal point of the intervention (or joinder) analysis, *see WildEarth Guardians v. Nat'l Park Serv.*,

604 F.3d 1192, 1198 (10th Cir. 2010) ("The movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action[.]"). One relevant example is that "an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *Mountain Top Condo. Ass'n*, 72 F.3d at 366 (holding beneficiaries' interest in fund sufficient to intervene in action brought by third parties seeking recovery against fund). Thus, in *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001), this court held that where a federal appropriation was allocated among several Indian Tribes on the basis of a particular formula that one tribe had filed an action to challenge, the other tribes had a sufficient interest in the subject matter of the action to qualify as necessary parties under Rule 19(a).

### 2. Application of economic-interest distinction to this case

The distinction just drawn between (1) a nonparty creditor's economic interest in a suit involving its debtor and (2) a nonparty's specific economic interest derived from a claim on funds at issue in the suit, helps flesh out the deficient nature of the two interests asserted by QM of Wyoming identified earlier. QM of Wyoming's claim that Statewide owes it a substantial sum in unpaid loans clearly falls into the first category. Any suit with financial repercussions brought by or against Statewide would have a potential impact on Statewide's ability to repay the loans (as such a suit would also have on Statewide's ability to make good on any other obligations to

- 8 -

creditors), but, as we have seen, that is not enough to give QM of Wyoming an interest in *the subject matter of the suit* sufficient to warrant intervention.[1]

We also hold that QM of Wyoming's claim of a contract right to 20% of Statewide's gross margins on the St. Anthony's Project does not fall into the second category. Unlike the cases involving a distinct or separate fund or res, here there is no separate asset or entity as of yet, described as Statewide's gross margin on the St. Anthony's Project. Statewide's gross margin on the St. Anthony's Project merely describes an end result of a number of complex legal, business and accounting events which have not yet played out. So far as the record reflects, the gross profits on the St. Anthony's Project are not yet known or knowable, and won't be known until the resolution of pending litigation. Related to this point, and further reflecting the remote and derivative nature of the interest asserted here, is the fact that QM of Wyoming does not assert a claim based on any contract it has for the St. Anthony's Project (with either Statewide or QM of Colorado), but only looks to Statewide's potential recovery on the project as a source from which to collect on the collateral contractual obligation it is owed by Statewide.

QM of Wyoming seeks to intervene on the basis of a claim that does not relate to a fund or res in the case or arise out of the contract at issue between the parties to

---

[1] We recognize that the loans helped Statewide obtain and complete work on the St. Anthony's Project (and others), but of course commercial loans typically relate to the business operations of the obligor. If that sufficed to invoke Rule 24(a), a whole class of lender-creditors would be brought within its scope in a manner inconsistent with the distinction we have drawn above.

the litigation.  Although we noted in *San Juan County* that not every interest that could be characterized as indirect or contingent ipso facto fails under Rule 24(a), we also acknowledged that interests may simply be "*too* indirect" and "*too* contingent" to support intervention as of right, *San Juan Cnty.*, 503 F.3d at 1202.  That is the case here.

### 3.  Adequacy of existing representation of qualifying interest

But that is not the only obstacle to intervention here.  Even if a nonparty has a qualifying interest in the litigation, it is not entitled to intervene if "existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  The nonparty bears the burden of demonstrating that no existing party adequately represents its interest. *Coalition of Ariz./N.M. Cntys. For Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996).  Ordinarily, that burden is minimal, *id.*, but a recognized presumption heightens the burden for QM of Wyoming here.

We "presum[e] that representation is *adequate* when the objective of the applicant for intervention is identical to that of one of the parties." *San Juan Cnty.*, 503 F.3d at 1204 (internal quotation marks omitted).  In this regard, we distinguish between the objective of the suit and larger or collateral motives the party and nonparty may have:  the presumption applies if they have a common objective with respect to the suit; their motivations for pursuing that common objective are immaterial. *See City of Stillwell, Okla. v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996).  Even if their ultimate goals are actually in opposition,

as when the party and nonparty will ultimately clash over any spoils of the party's success in the suit, their common objective with respect to that success is the controlling consideration. *See Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872-73 (10th Cir. 1986). Here, as in *Bottoms*, the proposed intervenor claims a part of the recovery sought by a party in the action. While that may put them at odds in a general sense, it clearly aligns the relevant interest of the intervenor with the success of the party in this case. *Id.*

Consequently, any interest asserted by QM of Wyoming that may qualify under Rule 24(a) is presumed to be adequately represented by Statewide. In its motion for intervention, QM of Wyoming's only argument regarding adequacy of representation was that defendants QM of Colorado and James R. Anderson could not represent its interest because QM of Wyoming is a separate corporate entity with an existence distinct from these defendants. But that is immaterial here where the relevant interest aligns QM of Wyoming with another party—Statewide—that is in a position to adequately represent their common interest. Because QM of Wyoming has made no showing to rebut the presumption that Statewide adequately represents the interest implicating Rule 24(a), the denial of its motion to intervene as of right may properly be sustained on this ground as well. *See City of Stilwell*, 79 F.3d at 1043.

### 4. Specific arguments advanced by QM of Wyoming

We have considered the arguments advanced by QM of Wyoming and they do not dissuade us from the analysis and conclusion set out above. The thrust of much of its briefing is that its absence from the litigation means that the amounts it is owed by Statewide will not be offset, as it insists they should, against any recovery Statewide obtains in this case. But this argument ignores the distinct corporate existence of QM of Colorado, from which Statewide seeks to recover on the contract at issue here, and QM of Wyoming, to which Statewide allegedly owes money on other contracts. The latter could offset the former only if they involved the same corporation as obligor and obligee.

QM of Wyoming also objects that James R. Anderson is being sued for fraud on the basis of conduct that should not be attributed to him personally but to his role as president of QM of Wyoming, and that its absence from the litigation somehow impedes him from pursuing a defense in this regard. Whether or not such a defense would have any merit (and Mr. Anderson is still free to raise it himself), this line of argument by QM of Wyoming, suggesting that its absence prejudices an existing party, is irrelevant to intervention. Prejudice to an existing party can support that party's effort to join a nonparty, *see* Fed. R. Civ. P. 19(a)(1)(A) & (B)(ii), but a nonparty's unilateral effort to intervene in a case must be based on prejudice to its own interests, *see* Fed. R. Civ. P. 24(a)(2).

- 12 -

Finally, QM of Wyoming asks this court to take judicial notice of an action brought by Statewide in the Shoshone and Arapaho Tribal Court arising out of a construction project on Indian Reservation land. In that case, Statewide sued both QM companies. QM of Wyoming cites the case as an example of the multiplicity of suits that intervention is intended to reduce. But QM of Wyoming does not explain how its intervention in the instant action over the St. Anthony's Project would have prevented or obviated Statewide's separate suit to recover for work on the Indian Reservation project.

In sum, we hold that QM of Wyoming has asserted an interest that is insufficient to support intervention as of right.

## B. Permissive Intervention

We affirm the denial of permissive intervention for the reasons stated by the district court. Permissive intervention requires a claim or defense "that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As the district court noted, QM of Wyoming's claims against Statewide arise from a contract separate from the contract between the parties at issue here. The court also properly considered the prejudice and delay to Statewide should QM of Wyoming be allowed to complicate and expand Statewide's circumscribed action for recovery on one building project to include a second dispute over its collateral obligations to QM of Wyoming. Permissive intervention is a matter entrusted to the discretion of the

district court, *City of Stilwell*, 79 F.3d at 1043, and we discern no abuse of that discretion here.

The judgment of the district court is affirmed. QM of Wyoming's motion to take judicial notice is granted.

Entered for the Court


David M. Ebel
Circuit Judge